[Civ. No. 706.  First Appellate District.—November 30, 1909.]

## WILLIAM POWERS et al., Respondents, v. OLIVER A. PERRY et al., Appellants.

WATER RIGHTS—ACTION TO QUIET TITLE—EASEMENT IN SPRING ON LAND OF DEFENDANTS—UNRECORDED GRANT—BONA FIDE PURCHASERS—NOTICE.—In an action to quiet title to sufficient water flowing from a spring on the land of the defendants through a pipe running from beneath the spring underground to plaintiffs' land for "household purposes" under an unrecorded grant from a former owner of the land, and the consent of his successor to the laying of the pipe, in which action the defendants claim protection as *bona fide* purchasers of the land without notice of any easement of plaintiffs in the spring, they are entitled to such protection, unless it be shown that they are chargeable with constructive notice of its existence.

ID.—NATURE OF CONSTRUCTIVE NOTICE—KNOWLEDGE OF FACTS PUTTING ON INQUIRY—PRESUMED KNOWLEDGE.—Constructive notice to the purchasers of the land of an easement in a spring on the land purchased is a knowledge of facts putting them on inquiry as to the existence of the main fact of the easement, and raising against them conclusively a presumed knowledge of its existence.

ID.—BURDEN OF PROOF UPON PLAINTIFFS TO SHOW PRESUMED KNOWLEDGE OF EASEMENT.—The burden of proof is upon the plaintiffs seeking to quiet their title as claimants of the easement in the spring, under an unrecorded grant from a former owner of the land, to show that the defendants, as subsequent purchasers of the land containing the spring, had knowledge of facts sufficient to raise a conclusive presumption as to their knowledge of the main fact of the right of plaintiffs to the use of the water for the purposes specified in such grant.

ID.—PROOF OF SOMETHING VISIBLE REQUIRED.—The proof must show something visible upon the land shown to the defendants, and patent to any prudent person possessing ordinary faculties, that would at least suggest that plaintiffs were taking the water from the spring.

ID.—FINDING OF CONSTRUCTIVE NOTICE AGAINST EVIDENCE.—Where the evidence shows that defendants, after purchasing the land through real estate agents, without being informed of any easement in the spring in question, upon visiting the same found the sides of it covered with grass and overhanging weeds, preventing the sight of any pipe therein, with nothing to indicate that any pipe laid therein connected with plaintiffs' land, and found that the only manifest use of the water was through an unseen pipe carrying water from the spring to a trough on the land purchased, it is held that a finding that they had knowledge of facts putting them on inquiry as to the use of the spring by plaintiffs was against the evidence.

ID.—DUTY OF DEFENDANTS—HIDDEN PIPE—TROUGH AND STAND-PIPE ON PLAINTIFFS' LAND.—Defendants were not in duty bound to explore the bottom of the spring to find a pipe hidden therein leading toward plaintiffs' land; and if they saw a trough and stand-pipe on plaintiffs' land, they were not bound to inquire as to the source of its supply, it being natural to suppose that it came from a spring on plaintiffs' land or some other place.

ID.—NO QUESTION OF ADVERSE USER INVOLVED.—The plaintiffs' user of the spring not having continued for five years, and there being nothing open or notorious in the mode of the user, there is no question of adverse user involved which can aid the plaintiffs.

ID.—INADMISSIBLE EVIDENCE—OTHER SPRINGS ON LAND OF DEFENDANTS. The court erred in allowing the plaintiffs to prove that there are three springs of water on the land of the defendants, and that plaintiffs have no other source of supply of water than the pipe-line leading from defendants' spring.

ID.—LOSS CAUSED BY NEGLIGENCE OF PLAINTIFFS.—Both plaintiffs and defendants having paid for the water, the rule applies that where one of two innocent parties must suffer, the loss must fall on the one through whose negligence it occurred. In this case the loss must fall upon the plaintiffs who failed to use the ordinary precaution to record their grant of the water right, whereby they could have avoided this litigation.

ID.—UNCERTAIN JUDGMENT.—A judgment merely adjudging to plaintiffs the right "in and to sufficient water for household purposes," without defining the amount of water the plaintiffs will need for such purposes, is fatally uncertain. The judgment must be sufficiently certain to constitute an estoppel between the parties and to be enforced by the court.

APPEAL from a judgment of the Superior Court of Santa Cruz County, and from an order denying a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Wyckoff & Gardner, for Appellants.

James A. Hall, for Respondents.

COOPER, P. J.—This action was brought for the purpose of quieting plaintiffs' title to an alleged water right in and to sufficient water from a spring on defendants' land for "household purposes," for the right to convey the same through a pipe to the adjoining lands of plaintiffs on the west, and to enjoin the defendants from in any way interfering with such water right. The case was tried before the court without a jury, and findings filed upon which judgment was entered for plaintiffs as prayed. This appeal is from the judgment and from the order denying defendants' motion for a new trial.

The main facts, concerning which there is no controversy, are substantially as follows: On the twenty-eighth day of April, 1898, one Edward White and his wife were the owners of a tract of land in Santa Cruz county, which tract embraced the lands now owned in separate tracts by plaintiffs, by defendants and by White. On said day White conveyed to plaintiffs the lands described in the complaint, containing about fifty-four acres, by an ordinary grant, bargain and sale deed, which deed contained no reference to any water right of any kind. This deed was immediately placed upon record. On the same day, and as a part of the consideration, White executed and delivered to plaintiffs a written grant to the waters of a spring on the adjoining land retained by White "sufficient for household use," with the right of ingress and egress to and from the land on which the spring was situated. The plaintiffs entered into the possession of the land so conveyed to them, and used the waters of the spring for household purposes by taking the animals to the spring to water them, and by hauling the water to their dwelling-house west of the spring. No controversy arose between the plaintiffs and White as to the use of the waters from the spring.

On November 1, 1900, White, by an ordinary deed of grant, sold and conveyed the tract of land now owned by defendants and on which the spring is located to one Patterson, which deed was duly recorded. This deed made no men-

tion of the water right of plaintiffs nor did it refer to it. Patterson, however, had actual notice of the claim of plaintiffs to the use of the waters of the spring, but he did not know of the water right being in writing. No question, however, arose between Patterson and plaintiffs as to the use of the water. During the year 1904, with the consent of Patterson, the plaintiffs ran a three-quarter inch pipe some ten or twelve inches underground from a box at the spring down the hill, across a canyon, and thence up the hill about one hundred and fifty feet west of the boundary line between Patterson and plaintiffs, where the pipe again emerged from the ground by a stand-pipe which emptied into a trough on the land of plaintiffs. This pipe, at the point where it leaves the spring, was parallel to a similar pipe which extended from the box at the spring down the hillside to a trough on the Patterson land, where it emerged from the ground and emptied into the said trough for the use of Patterson. This condition appears to have continued without interruption until the fifteenth day of May, 1906, when Patterson, for a valuable consideration, sold the land to defendants, and executed a deed of conveyance to them. The sale by Patterson was made through an agent, who showed defendants over the premises, but neither Patterson nor the agent spoke to defendants as to any claim of any kind of a water right. In fact, it is not now claimed that defendants had any actual notice as to the plaintiffs' claim to the water. Defendants had the records searched, but the grant to the water right claimed was not of record. It was not until July, 1907, that defendants, according to their testimony, discovered, and at the same time objected to, the use of the water through the pipe from their spring. In August, 1907, the plaintiffs placed the grant to the use of the water made to them by White of record.

The defendants thus became the innocent purchasers for a valuable consideration of their tract of land freed of any claim to the water right unless the finding of the court that they had constructive notice can be sustained.

In this regard the court finds: "That said defendant Margaret E. Perry and her husband, Albert A. Perry, had actual notice of circumstances sufficient to put a prudent man or woman upon inquiry as to the fact that the said plaintiffs

were adversely, openly, notoriously, continuously and uninterruptedly using the water from said spring on the land immediately thereafter purchased by said Margaret E. Perry described and set out in finding No. 2 herein."

If the defendants, at the time of their purchase, had actual notice of sufficient facts to put a prudent person upon inquiry, as found by the court, they are bound by the grant of the water to the plaintiffs.

This brings us to a consideration of the main question as to whether the evidence is sufficient to support the finding that defendants had constructive notice. Our code (Civ. Code, sec. 19) defines constructive notice as follows: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

It is said in the American and English Encyclopedia of Law, second edition, volume 21, page 582: "Constructive notice has been defined to be no more than evidence of notice the presumption of which is so violent that the court will not allow it to be controverted."

The above definition is quoted with approval in the exhaustive note to *Le Neve* v. *Le Neve* on the question of constructive notice, in White & Tudor's Leading Cases in Equity, sixth edition, volume 2, part 1, star page 46, and the authorities for it are given as follows: *Plumb* v. *Fluitt,* 2 Anst. 438, and *Kennedy* v. *Green,* 3 Mylne & K. 719.

It has been defined by our own supreme court in *Wilkerson* v. *Thorp,* 128 Cal. 224, [60 Pac. 679] , as follows: "Constructive notice is a knowledge of such facts that the party possessing such knowledge is conclusively presumed to know other things besides the facts which have been proven to have come to his knowledge. The information or knowledge of facts possessed by a party must be such that he is conclusively presumed to have notice of the main fact to which the constructive notice is invoked."

Applying the above definitions, it is clear that the burden was upon plaintiffs to prove that the defendants had knowledge of facts sufficient to raise a conclusive presumption against them as to knowledge of the main fact, that is, the

12 Cal App.—6

right of plaintiffs to the use of the water for the purposes named in the grant made to them by White. If the defendants had known that the water was being used by plaintiffs, it would have been their duty to make inquiry concerning the matter, and ascertain, or endeavor to ascertain, the true facts. And it matters not how such knowledge was obtained, whether by being told orally, or by seeing the plaintiffs taking and using the water, or by seeing the pipe leading from the spring, or patent evidence of such pipe leading from the spring down the hill off the defendants' land, across the canyon and up to the trough of plaintiffs. In other words, there must be something visible upon the lands shown to defendants, and patent to any prudent person possessing ordinary faculties, that would at least suggest that plaintiffs were taking the water from the spring. We have carefully read the evidence, and do not find it such as to support the finding.

Defendants looked over the place and at the spring, but they each testified that they saw no pipe or evidence of any pipe leading from the spring off their place. The agent Mann, who was with them, testified that he did not see any pipe or anything to indicate a pipe running from the spring to the lands of plaintiffs. It was in evidence that the end of a three-quarter inch pipe was in the spring; that it could be seen by looking down in the bottom of the spring; but the evidence clearly shows that this end of the pipe was near the end of the pipe conveying the water to the trough on the defendants' own premises, and that they both tapped the spring some eighteen inches below its surface, and that the spring was partly covered with a heavy growth of briers and tall grass. It was testified by one or two witnesses that there was a depression in the ground leading off down the hill from the spring toward the trough on defendants' land sufficient to indicate that a pipe had been buried in the ground there; but this was perfectly consistent with the fact that it was only the pipe leading down from the spring to the trough on defendants' land. And not only this, but it was shown without contradiction that the ground at and near the spring, and for some distance between the spring and defendants' trough down the hill, is wet and covered with a heavy growth of briers and grass. It was also shown without dispute that

below the trough on defendants' land, and from that west to the plaintiffs' boundary line, the land had been plowed and cultivated, and no evidence was found by anyone plowing the land of any underground pipe. One of the plaintiffs testified that beyond the land of defendants and across the canyon there is a ''visible depression'' where the pipe-line runs up the hill; but he did not pretend to state how far this depression extends, nor whether it was visible in any manner at the time the defendants purchased, or whether it was visible from the premises purchased by defendants. It was also shown that plaintiffs had plowed and cultivated the hillside through which the pipe was laid below their stand-pipe and box down the hill to or nearly to defendant's land. The plaintiff, William Powers, testified that the depression that he had mentioned in his testimony did not run any farther down than from the spring to defendants' trough; that the surface is heavily covered with swamp grass and briers. He further testified that weeds and grass were growing around and hanging over the box at the spring, so that you could hardly see the water unless you cleared away the weeds and grass.

It does not seem reasonable to impute notice by such facts. Defendants were not compelled to look down into the bottom of the box to see if the ends of two iron pipes were contained therein; nor were they required to dig up the soil to look for a hidden pipe leading off the property. It is said the stand-pipe and box were visible across the canyon, and where the water came out of the plaintiffs' pipe into the box on the hillside. Conceding that defendants saw the stand-pipe and trough on plaintiffs' land, they were not bound to inquire where the water came from simply on account of seeing such trough. It was perfectly natural to suppose that the water came from some other place or from a spring on plaintiffs' own land.

Nor can the doctrine of adverse user aid the plaintiffs. The right of daily ingress and egress to and from and across the land for the purpose of taking water had not existed for five years when the pipe was laid by the consent of Patterson. This pipe had not been in the ground for five years when this action was brought, and not only this, but the use by a pipe covered with earth was not open or notorious.

The court erred in allowing the plaintiffs to prove, over defendants' objection, that there are three springs of water upon defendants' land, and that plaintiffs have no other source of supply of water than the pipe-line leading from defendants' spring. It is true the case was being tried by the court; but as the court, over defendants' objection, admitted the evidence, and seemed thus to deem it important, we cannot say that the evidence when admitted did not influence the decision of the trial judge. The fact that defendants have three springs and plaintiffs none, while a misfortune to plaintiffs, is not a reason for giving plaintiffs the use of that which in law belongs to the defendants. Plaintiffs in purchasing the land paid White for the water. Defendants in purchasing their land paid Patterson for the water. One of two innocent parties must suffer, and in such case the loss must fall upon the one through whose negligence it occurred. The plaintiffs, by taking the ordinary precaution of placing the conveyance to their water right of record, could have avoided this litigation.

The judgment is fatally uncertain, being "in and to sufficient water for household purposes." There is no allegation as to the amount of water the plaintiffs will need for "household purposes." No mention is made of the number of stock to be watered or the number of houses to be supplied. The plaintiffs might erect several houses for their families or relatives upon the land, or build houses for tenants. It is evident that no one could tell by the present judgment the extent of the servitude sought to be placed upon defendants' land. The judgment must be sufficiently certain as to constitute an estoppel between the parties and to be enforced by the court. (*Rogers* v. *Overacker,* 4 Cal. App. 333, [87 Pac. 1107]; *Riverside Water Co.* v. *Sargent,* 112 Cal. 230, [44 Pac. 560]; *Steinberger* v. *Meyer,* 130 Cal. 156, [62 Pac. 483].) It was said in the latter case: "Indeed, as the judgment now stands, it can only serve the single purpose of furnishing the groundwork for future litigation, and plaintiff is certainly entitled to something more. He is entitled to a plain and explicit adjudication declaring what

his rights are to these waters, and what defendants' rights are to the waters, if they have any.''

The judgment and order are reversed.

Kerrigan, J., and Hall, J., concurred.