In re BLACK & WHITE CATTLE CO., a California limited partnership, Debtor.

BLACK & WHITE CATTLE CO., a California limited partnership, Debtor and Debtor in Possession, Plaintiff/Counter-Defendant/Appellee,

v.

SHAMROCK FARMS COMPANY, an Arizona corporation, and McLod Farms Company, an Arizona corporation, Defendants/Counter - Claimants/Appellants,

and

Modesto Production Credit Association, Defendant.

BAP No. CC–82–1390–KHAb.
Bankruptcy No. LA–82–06631–CA.
Adv. No. LA–82–3861–CA.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Jan. 20, 1983.

Decided March 15, 1983.

Gerald K. Smith, Lewis & Roca, Phoenix, Ariz., for defendants/counter-claimants, appellants.

Jeffrey H. Davidson (Argued), Jeffrey C. Krause, Stutman, Treister & Glatt, Los Angeles, Cal., for plaintiff/counter-defendant/appellee.

Before KATZ, HUGHES and ABRAHAMS, Bankruptcy Judges.

## OPINION

KATZ, Bankruptcy Judge.

Shamrock Farms Company and McLod Farms Company (hereinafter collectively referred to as Shamrock), defendants, have appealed from a partial summary judgment in favor of Black and White Cattle Co., the debtor and debtor-in-possession. The judg-

ment was certified as final pursuant to Fed.R.Civ.P. Rule 54(b) and entered on August 11, 1982. The judgment held as follows:

(1) Black and White, as the debtor-in-possession, by virtue of 11 U.S.C. §§ 544(a) and 1107, may avoid Shamrock's claim of ownership to cattle in the possession of the debtor on April 12, 1982—the date of the commencement of this case—as a result of Shamrock's failure to record the feeding agreement as required by Cal.Civ.Code § 2980.5.

(2) Neither Shamrock nor McLod are entitled to a lien against the cattle in the debtor's possession on April 23, 1982.

(3) Shamrock is compelled to pay the purchase price of $2,400,000 plus 12% per annum (accruing from May 4, 1982) pursuant to the stipulated partial judgment entered by the court.

Having determined there to be no triable issues of material fact, the bankruptcy court's decision to grant partial summary judgment in favor of Black and White is hereby AFFIRMED, as required by Fed.R. Civ.P. Rule 56.

### FACTS

Black and White Cattle Co. was formed as a California general partnership by Steven C. Voorhies and David H. Brown in 1979. In July of that year Black and White initiated operation of a feed lot on leased property in Santa Maria, California.

Shamrock, a major Arizona dairy concern, signed a cattle feeding agreement (hereinafter "agreement") with Black and White on November 21, 1980. According to the terms of the agreement, Shamrock was to deliver at least 2,000 head of cattle to the feed lot to be fed and cared for until ready for return to the appellant's dairy herd for production. From November 21, 1980, until April 23, 1982—the date the debtor filed its petition—Shamrock had delivered approximately 3,500 heifers and 57 bulls into the possession of the debtor. The acquisition cost of $1.4 million and subsequent feeding costs of $1.5 million were financed through loans extended by a creditor not a party to this appeal. It is agreed that the fair market value of the cattle in the possession of the debtor on the date of the commencement of this case is $2,400,000.

During the latter portion of 1981 Black and White found itself in need of additional capital. The fathers of the general partners each invested $500,000 and were added as limited partners. A certificate of limited partnership was executed in late August and recorded on September 21, 1981.

The restructured Black and White Cattle Co. filed a voluntary petition for reorganization under Chapter 11 of the Code on April 23, 1982. At the same time Black and White, as debtor-in-possession, initiated an adversary proceeding by filing a complaint, seeking to avoid Shamrock's reservation of ownership in the cattle on the feed lot for the reason that it failed to record the feeding agreement as required by Cal.Civ.Code § 2980.5.[1] The complaint also alleged

---

1. § 2980.5 **Livestock contracts**

(a) **Definitions.** As used in this section "contract" means any agreement, other than one intended to create a security interest (Section 9102(1)(a) of the Uniform Commercial Code), for the leasing of livestock or other animate chattels, or any agreement for the bailment or feeding of cattle of such breeds or crossbreeds as are primarily used for the production of milk for human consumption (hereinafter termed "dairy cattle"); "lessor" means the lessor of any such chattels, or the bailor or person owning dairy cattle under a feeding agreement; "lessee" means the lessee of any such chattels or the bailee or person feeding dairy cattle. For the purposes of this section bovine animals of

the Galloway, Hereford, Polled Hereford, Aberdeen Angus, shorthorn (other than milking shorthorn), and Brahma breeds or crossbreeds within any of said breeds, and steers of any breed or crossbreed, including dairy breeds and crossbreeds, are not "dairy cattle."

(b) **Recording.** Unless any such contract is recorded in accordance with subsection (d) of this section within 10 days after the contract is executed, every provision therein reserving title or property in any such chattels to the lessor after possession of the chattels is delivered to the lessee shall be void as to any purchaser, creditor or encumbrancer who, without actual knowledge of such provision, in good faith and for value purchases

Shamrock's refusal to pay for feeding costs and sought authority to immediately sell the cattle free and clear of Shamrock's claim.

On May 8, 1982, the court approved a stipulated partial judgment which authorized Black and White to sell the cattle to Shamrock for $2,400,000, plus 12% per annum (to accrue from May 4, 1982 to date of payment). The purchase price was to be secured by a lien in the cattle and a bond. The funds were to be placed in an interest-bearing escrow account pending the ultimate disposition of title to the cattle.

Black and White subsequently filed a motion for partial summary judgment on June 7, 1982, seeking judgment on its claim to set aside Shamrock's claim to the cattle under Cal.Civ.Code § 2980.5, 11 U.S.C. §§ 544(a) and 1107. The motion also sought dismissal of Shamrock's counterclaim for the imposition of a lien against the cattle to compensate for the lesser of feed costs or the appreciation of the cattle in the event Black and White was successful in avoiding Shamrock's claim of ownership.

Following the submission of supporting documents and oral argument, the court entered its findings of fact, conclusions of law and partial summary judgment in favor of Black and White certified as final as provided by Fed.R.Civ.P. Rule 54(b).

Shamrock has asserted the following arguments on appeal:

(1) California Civil Code § 2980.5 defines and limits the avoidance powers granted to Black and White as the debtor-in-possession under 11 U.S.C. §§ 544(a) and 1107 to the rights of a creditor obtaining a lien in good faith and without knowledge of Shamrock's prior reservation of ownership in the cattle. Since the cattle bore Shamrock's brand, no good-faith creditor is even hypothetically possible here because branding gives constructive notice of ownership under California law.

(2) The debtor was not a party to the unrecorded feeding agreement. No creditors of Black and White Ltd. may claim the benefits of Cal.Civ.Code § 2980.5. Thus, there is no occasion for a hypothetical creditor of the debtor to avoid Shamrock's claim of ownership to the cattle.

(3) Alternatively, should Shamrock's interest be set aside, the appellant seeks an equitable lien against the cattle as provided by 11 U.S.C. § 550 to compensate for the lesser of feeding expenses or the appreciation in value of the herd from the date of delivery to the feed lot.

(4) If Shamrock's claim is avoided and vested in the debtor-in-possession, the appellant contends that it should not be compelled to pay the purchase price as required

---

the chattels from the lessee or acquires a security interest therein or lien thereon by security agreement, attachment or levy, before the contract is so recorded, and as to any other creditor who, without actual knowledge of such provision, in good faith and for value becomes a creditor after possession of the chattels is delivered to the lessee and before the contract is so recorded, and as against any such purchaser, creditor or secured party title or property in any such chattels shall be conclusively presumed to have been transferred to the lessee unless the contract is so recorded.

(c) **Security interest; acquisition; priority.** Without limiting the generality of subsection (b) of this section, for the purposes of this section a secured party having a security interest in livestock or other animate chattels and whose security agreement provides that it shall cover any such chattels subsequently acquired by the debtor shall be deemed to acquire a security interest upon any such

chattels, the possession of which is thereafter delivered to the debtor under any contract as above defined, at the time possession thereof is acquired by the debtor, and such security interest shall be prior and superior to the right, title or interest of the lessor under any such contract unless the contract is recorded within 10 days after the contract is executed.

(d) **Acknowledgment; proof; certification; recordation; residence.** Any such contract must be acknowledged or proved and certified and must be recorded in the office of the county recorder of the county where the chattels are located at the time the contract is executed and also in the county where the lessee resides unless the lessee is a nonresident. Where the lessee is a corporation or a partnership the county of residence thereof for the purpose of recording such contract shall be deemed to be the county wherein such corporation or partnership has its principal place of business within this State.

by the stipulated partial judgment entered below until a contribution is first sought from the general partners to cover any deficiencies in the estate.

(5) The appellant contends that Cal.Civ. Code § 2980.5 is unconstitutional because it irrationally imposes a burden to record exclusively on owners of dairy cattle subject to a feeding agreement, and not on owners of other cattle.

(6) The bankruptcy court is without jurisdiction to hear this matter.

*Avoidance of Shamrock's Interest in the Cattle*

The disposition of title in the cattle and the major issue in this appeal rest upon the application of Cal.Civ.Code § 2980.5. We, accordingly, address this matter at the outset.

By enacting § 2980.5 the California Legislature created a system to protect purchasers and creditors dealing with feed lot operators who are in possession of cattle belonging to another. The principle which deems the separation of ownership and possession to be presumptively fraudulent is deeply engrained in our jurisprudence. *See e.g., Twyne's Case,* 3 Co.Rep. 80b (1601). *See gen.* 37 C.J.S. Fraudulent Conveyances §§ 1–7. Accordingly, § 2980.5 requires the owner of dairy cattle which are delivered into the possession of a feed lot operator to record the feeding agreement so that others will be on notice of the owner's claim to the cattle. *Calva Products v. Security Pacific Nat'l Bank,* 111 Cal.App.3d 409; 168 Cal. Rptr. 582 (1980).

(1) Should the owner of the cattle fail to record the feeding agreement within 10 days of its execution, all terms reserving title in the bailed cattle after delivery to the feed lot are void as against any purchaser, creditor or encumbrancer who purchases, acquires a security interest, or seeks to enforce a lien upon the cattle in good faith and without knowledge prior to the recording of the agreement. In addition, the statute also protects a gap creditor who in good faith and without actual knowledge

extends credit after delivery of the bailed cattle pursuant to an unrecorded feeding agreement despite the fact that the creditor obtains a lien after the agreement is recorded. As to the above-mentioned protected classes title in the cattle is "conclusively presumed" to have been transferred to the feed lot operator.[2]

Shamrock concedes the application of Cal. Civ.Code § 2980.5 to the parties' feeding agreement. Nor is there an issue concerning the authority of a debtor-in-possession to avoid the ownership interests reserved in an unrecorded feeding agreement under § 2980.5, as a general principle of law, by virtue of 11 U.S.C. §§ 544(a) and 1107. Rather, the appellant contends that the presence of its registered brand and other identification on the cattle negates the possibility for *any* creditor, even one hypothetically created under 11 U.S.C. § 544(a), to obtain a lien in good faith and without actual knowledge of Shamrock's claim of ownership.

The appellant supports this reasoning upon two premises. First it is argued that § 2980.5 can benefit only those who could possibly rely on the misleading appearances created by the separation of ownership from possession; e.g., feed suppliers and other trade creditors directly aware of the cattle in Black and White's feed lot. Given the prevailing trade practice of brand inspection, any creditor refusing to acknowledge the presence of Shamrock's brand would not be extending credit in good faith as required by the statute. Secondly, it is argued that the very presence of the brand gives constructive notice of Shamrock's claim to the cattle. Thus, Black and White as debtor-in-possession by assuming the status of a trustee is similarly bound and precluded from avoiding Shamrock's claim in the cattle.

▮ Shamrock's attempt to limit the protective scope of Cal.Civ.Code § 2980.5 to those relying on the misleading appearance of the cattle in the debtor's possession is unfounded. The express language of the

2. *See* note 1 at p. 510, *supra.*

statute provides the power to avoid the owner's reservation of title to all creditors extending credit after delivery of the cattle pursuant to an unrecorded feeding agreement regardless of whether such creditor knew of or relied on appearances. Furthermore, Cal.Civ.Code § 2980.5(c) extends the benefits to those creditors holding a security interest in after acquired cattle. *Merced Production Credit Ass'n v. Bayer,* 222 Cal. App.2d 793, 35 Cal.Rptr. 511 (1963). Clearly there is no prerequisite for the creditor to rely on the state of the record before title may be "conclusively presumed" vested in the feed lot operator. Rather, Cal.Civ.Code § 2980.5(c) permits the creditor's interest to attach to the additions at the moment the debtor obtains possession regardless of whether the fact was ever brought to the attention of the creditor.

Placing limitations on Cal.Civ.Code § 2980.5 is not supported by any authority nor would such a construction further the intent of the legislature to provide maximum protection to uninitiated purchasers and creditors not familiar with the customs of the dairy trade. Moreover, even if reliance was necessary before a creditor may seek the benefit of § 2980.5, Black and White as the debtor-in-possession may hypothesize such reliance on the misleading record notwithstanding the existence of the brands. *In re May,* 19 B.R. 655, 659 (D.C.N. D.Fla.1982). We therefore reject Shamrock's limited construction of Cal.Civ.Code § 2980.5.

*Good Faith*

■ The appellant's contention that branding precludes even a hypothetical creditor from acting in good faith is premised upon a limited construction of § 2980.5. Having held that the statute benefits creditors who may be ignorant of the significance of branding cattle there is no longer any obstacle to the advent of a hypothetical creditor obtaining a lien in good faith notwithstanding the presence of Shamrock's brand. It is irrelevant that some creditors may exhibit a lack of good faith by extending credit while aware of Shamrock's claim to the cattle. Black and White assumes the status of the "ideal" creditor under 11 U.S.C. § 544(a). To attribute bad faith to the debtor-in-possession would be inconsistent with the Code's policy vesting the trustee with the rights of the ideal "most favored" creditor possible under state law. 4 *Collier on Bankruptcy,* ¶ 544.02 at 544-4 (15 ed. 1982). Furthermore, the California courts have defined "good faith" in the commercial setting to mean honesty in fact. *Mueller v. MacBan,* 62 Cal.App.3d 258, 282, 132 Cal.Rptr. 222 (1976). This definition conforms with that of the majority of jurisdictions and of the Uniform Commercial Code. *See* Summers *"Good Faith in General Contract Law and the Sales Provisions of the Uniform Commercial Code",* 54 Va.L.Rev. 195, 207-216 (1968). Good faith, therefore, implies a benign state of mind viewed subjectively. A creditor acting unreasonably or imprudently may still act in good faith so long as his mind is free of a malevolent intent. *Hollywood National Bank v. International Business Machines,* 38 Cal.App.3d 607, 113 Cal.Rptr. 494 (1974). Thus, a creditor's failure to acknowledge a brand upon bailed cattle does not necessarily indicate the absence of good faith. Accordingly, there is no basis for the assertion that Black and White by assuming the rights and powers of the ideal hypothetical creditor cannot satisfy the good-faith requirement of Cal.Civ.Code § 2980.5. The debtor-in-possession, as the "ideal creditor", acts in good faith by definition.

*"Without Knowledge"*

Cal.Food & Agri.Code § 20609 provides that the presence of a brand on cattle creates a rebuttable presumption of ownership in circumstances in which the title is subject to dispute. Appellant asserts the following syllogism.

The presumption of ownership arising from the presence of a brand is at least equal in effect to possession. Since possession provides constructive notice, it must follow that branding gives constructive notice of ownership, thereby precluding resort to the Code's avoidance powers, *see In re Richardson,* 23 B.R. 434 (Bkrtcy.1982).

Appellant has not persuasively argued that branding under California law affords potential creditors constructive notice of its reservation of title to the cattle.

We must consider a rebuttable presumption to be a shorthand form of stating that, assuming a particular set of facts (i.e., branded cattle), an inference of ownership is appropriate if the trier of fact is not persuaded by contrary evidence. Cal.Evid. Code § 606 states:

> The effect of a [rebuttable] presumption affecting burden of proof is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact.

Prof. Morgan has explained when a rebuttable presumption affects the burden of proof, as provided by Cal.Food and Agri. Code § 20609, the legislature's intent is to require a finding of the presumed fact in the absence of more persuasive contrary evidence. *See* Cal.Evid.Code § 601, Comments—Law Revision Commission (West 1974).

■ On the other hand the creation of a conclusive presumption of ownership, as established in favor of the bailee of cattle by Cal.Civ.Code § 2980.5 under an unrecorded feeding agreement, is a substantive rule of law upon which the trier of fact is *required* to accept the proffered evidence regardless of any controverting evidence. *Gayton v. Pacific Fruit Express Co.,* 127 Cal.App. 50, 15 P.2d 217 (1932), *Williams v. Moon,* 98 Cal.App.2d 214, 219 P.2d 902 (1950).

With this distinction in mind we examine appellant's assertion that Cal.Food Agri. Code § 20609 creates a rebuttable presumption of ownership which is tantamount to constructive notice and overrides the conclusive presumption of transfer in the bailee as provided in Cal.Civ.Code § 2980.5.

Constructive notice has been described as "evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted", 58 Am.Jur.2d § 6 (1971). A California court of appeal has held that a party having constructive notice of a fact is "conclusively presumed" to have notice of the related facts not actually brought to his attention, *Powers v. Perry,* 12 Cal.App. 77 at 81, 106 P. 595 (1909).

If branding did give constructive notice under California law, one must question the reasoning of the court in *Lawler v. Solus,* 101 Cal.App.2d 816, 226 P.2d 348 (1951), and its inquiry as to whether, notwithstanding the presence of branded cattle, the secured creditor had knowledge of the owner's unrecorded interest in the cattle. Similarly in *Merced Production Credit Association v. Bayer,* 222 Cal.App.2d 793, 35 Cal.Rptr. 511 (1963), the court voided the seller's interest in cattle delivered into the possession of a farmer pursuant to an unrecorded conditional sales contract despite the presence of its brand.

■ Thus, we do not agree that branding provides the equivalent to constructive notice, nor are we ready to expand the concept of constructive notice to these circumstances where the California legislature has not done so. Furthermore we hesitate to adopt Shamrock's views concerning the strained co-existence of Food & Agri.Code § 20609 and Cal.Civ.Code § 2980.5 since, as appellant correctly observes, such a construction would necessarily result in the repeal of Cal.Civ.Code § 2980.5 by implication.

For the past half century the California legislature has periodically reviewed and amended the statute which is presently known as Cal.Civ.Code § 2980.5. All the while there existed the presumption of ownership created by the presence of branded cattle, as currently provided in Cal.Food & Agri.Code § 20609. Had the legislature considered branding to be a substitute for recording one must question the need for the series of amendments to the predecessors of § 2980.5 or question the reason for simply not articulating such intent. We must conclude, therefore, that the statutes do not conflict nor are they intended to serve the same function. Cal.Food & Agri. Code § 20609 merely creates an evidentiary presumption of ownership in a case where, for example, a title to a stray animal may

be in dispute. Cal.Civ.Code § 2980.5, on the other hand, addresses an entirely different concern, to-wit, that of preventing the invidious results arising from secret, unrecorded liens.

The express, chosen remedy is to require the recording of feeding agreements. Shamrock has failed to do so and cannot escape the consequences by contending that its brand serves as a substitute. Thus, Black and White is not precluded from claiming the benefits of Cal.Civ.Code § 2980.5 by virtue of 11 U.S.C. §§ 544(a), 1107. The conclusive presumption of ownership in the debtor as transferee as provided in § 2980.5 serves as a basis upon which Black and White may avoid Shamrock's claim of ownership.

We are mindful of the recent opinion of the Court of Appeals for the Third Circuit entitled *McCannon v. Marston,* 679 F.2d 13 (3d Cir.1982). That case, construing Pennsylvania law, held that the provisions of 11 U.S.C. § 544(a), which permits a trustee to exercise rights and powers of certain creditors and purchasers without regard to any knowledge, does not permit a trustee to avoid an unrecorded purchase agreement of real property where the purchaser was in possession of the property. That possession obliged the trustee, under state law, to inquire into the purchaser/possessor's claimed interest, because under Pennsylvania law, clear and open possession of real property generally constitutes constructive notice to a subsequent purchaser of possible legal or equitable rights of the possessor.

*McCannon* is distinguishable from this case on two bases. First of all, we are not dealing here with a person in possession of real property, but most importantly, California state law provides that an unrecorded feeding agreement *voids* (emphasis added) all terms reserving title in the bailed cattle as against any purchaser, creditor or encumbrancer. Hence, possession, without a recorded instrument, does not require inquiry as to the ownership interest in the cattle.

### Restructuring of Black and White Cattle Co.

On September 21, 1981, Black and White recorded a certificate of limited partnership. The appellant has raised the additional argument that no creditor of the debtor, even one hypothetical in nature, could avail itself of the benefits of Cal.Civ.Code § 2980.5 since the debtor was not a party to the unrecorded feeding agreement.

■ We cannot agree. The statute expressly voids any provision in the unrecorded agreement reserving title to the owner "after possession of the chattels is delivered to the *lessee*" (emphasis added). Subsection (a) defines "lessee" so as to include a person feeding dairy cattle. The debtor comes within the scope of this definition. To further the policy of protecting creditors from "secret liens" it is apparent that the application of Cal.Civ.Code § 2980.5 extends to creditors of a debtor actually operating the feed lot. A more limited application would simply frustrate the drafter's intent. *See Calva Products, supra,* 111 Cal. App.3d at 419, 168 Cal.Rptr. 582. Furthermore, the parties to the feeding agreement intended the rights and obligations to be "binding upon and shall inure to the benefit of the parties ... their assigns and all other successors-in-interest." For either reason, Black and White's creditors are clearly protected by Cal.Civ.Code § 2980.5.

Shamrock's contention that the restructuring of the debtor has created a new legal entity thereby precluding the existence of a hypothetical creditor under Cal.Civ.Code § 2980.5 is not supported by law. California Corporation Code § 15031(7) permits a general partnership to admit new partners without resulting in dissolution of the partnership provided there is a written agreement to that effect. There is every indication in this case that all partners signing the limited partnership agreement intended to have Black and White continue its existence. The primary purpose of the restructuring was evidently to obtain an infusion of needed capital. The essential aspects of the general partnership remained central components of the limited partnership.

We therefore agree with the trial judge's decision upholding the authority of the debtor-in-possession to set aside the appellant's reservation of title in the unrecorded feeding agreement.

*Transferee's Lien for Improvements on Recovered Property. § 550(d)*

It is to be observed that 11 U.S.C. § 550(d) permits a good-faith transferee of an avoided transfer which is subject to recovery by a trustee a lien on the property equal to the lesser of the cost of improvement or the appreciation in value. Shamrock has sought such a lien in compensation for the $1.5 million reflecting the cost of feeding or alternatively, the appreciation in value over the acquisition cost of the cattle, whichever is determined to be the lesser amount.

There is no basis within the Code for granting a lien on the cattle under these circumstances. Section 550(d) refers to the recovery of transfers avoided under § 544(a). The definition of *transfer* contained in the prior act has been retained in § 101(40) of the Code. Although the term is meant to be all encompassing, the essential aspect requires a "disposition of or parting with property." *Collier on Bankruptcy,* § 101(10) at 101–76 (15 ed. 1982). Section 544(a) incorporates the broad definition of transfer to enable the trustee to avoid *dispositions of the debtor's property* which are avoidable by a creditor under state law. *In re Murrieta Hot Springs,* 6 B.R. 73 (Bkrtcy. 1980).

■ Shamrock's reservation of a claim to the cattle in the feeding agreement was clearly not a "disposition" or "parting with property" of the debtor's. Furthermore, the trustee under § 544(a) ascends to the rights of the protected creditor under Cal. Civ.Code § 2980.5. That statute's protective mechanism does not necessarily involve the avoidance of a *transfer.* Rather, as in the present case, the debtor-in-possession assumes the rights and powers of a favored judicial lien creditor to avoid a purported reservation of title. Consequently, there can be no *recovery* of a property interest which was never *transferred* in the first

instance. The conclusion, therefore, must follow that § 550(d) is not available to Shamrock given the facts of this case.

*Order Compelling Payment of the Purchase Price*

The appellant has also objected to the payment of the stipulated purchase price ($2,400,000 plus 12% per annum accruing from May 4, 1982). Shamrock supports its argument for delaying payment pending the determination of any deficiency by maintaining that compliance with the order will inure to the benefit of debtor's general partners.

■ The Code's avoidance powers are intended for the benefit of the debtor's creditors. *In re Wilson,* 4 B.R. 605, 607 (Bkrtcy. 1980). 11 U.S.C. § 723 is consistent in this regard by retaining the rule that general partners are primarily liable to the trustee in the event of a deficiency. *In re Jercyn Dress Shop,* 516 F.2d 864 (2nd Cir.1975).

■ Reference to § 723 may be necessary in confirming a plan of reorganization, 11 U.S.C. § 1129(a)(7)(A)(i), (ii), House Report No. 95–595, 95th Cong., 1st Sess. (1977) 112, U.S.Code Cong. & Admin.News 1978, p. 5787, notwithstanding the general restrictions contained in 11 U.S.C. § 103(b) on the application of the provisions of Chapter 7. We cannot agree, however, with the appellant that § 723 permits a delay in paying for the cattle as ordered. Section 723 clearly contemplates the imposition of liability upon the general partners only after it is determined that available partnership property is deficient for the satisfaction of partnership debts. 11 U.S.C. § 723(a). *Turner v. Central National Bank of Mattoon, Illinois,* 468 F.2d 590, 591 (7th Cir.1972). The $2,400,000 plus-interest purchase price owed by Shamrock is obviously a major asset of the debtor's estate which the debtor-in-possession must recover for the benefit of the creditors. The existence of any deficiency can only be determined after all such assets are marshalled and subject to an accounting. Only at this later stage of the case can § 723 have any bearing on the confirmation

of a plan. This section is simply not applicable at an earlier stage of the debtor's reorganization.

In addition, Shamrock's reliance on the cited case law is inappropriate. As discussed above, we are not here concerned with recovery of an avoided transfer. The appellant has retained no interest in the cattle. By the terms of the stipulated partial judgment entered below, Shamrock has been relegated to the status of any other third party obligated to satisfy a matured contractual obligation. 11 U.S.C. § 542(b). *See also, In re Verco,* 10 B.R. 347, 351 (9th Cir.Bkrtcy.App.1981). The debtor-in-possession is therefore entitled to the prompt payment of the purchase price as required.

*Constitutional Challenge*

The California courts have expressly sustained the validity of Cal.Civ.Code § 2980.5 against a constitutional challenge. *Calva Products, supra,* 111 Cal.App.3d at 417–421, 168 Cal.Rptr. 582. We are not inclined to relieve Shamrock of its obligation in light of the ruling by the state court.

Finally, the bankruptcy court had jurisdiction to hear the case and enter the judgment on appeal. The judgment was entered on August 11, 1982, well within the period preceding the effective date of the *Marathon* decision. *Christian Life Center Litigation Defense Committee v. U.S. Bankruptcy Appellate Panels* (C–83–0318AJZ) (U.S.D.C.N.D.Cal.1982). We therefore conclude that the bankruptcy court had jurisdiction to enter the challenged judgment.

We hold upon reviewing the record that the entry of summary judgment in favor of Black and White Cattle Co., debtor-in-possession, is appropriate, there being no triable issues of material fact, Fed.R.Civ.P. Rule 56. Judgment AFFIRMED.

ABRAHAMS, Bankruptcy Judge, concurring.

I concur in the majority opinion and write this separate statement only to discuss three aspects of the dissent.

1. It is unnecessary to decide at this time the exact nature or form of Shamrock's claim; for example, it could be a claim under 11 U.S.C.

1. *Actual claims.* The dissent states that Shamrock's interest can only be avoided to the extent necessary to pay the actual or proved claims. (Dissent, Part III, A, 1.) This defies the clear meaning of section 544(a)(1) which arms trustees with the rights and powers of creditors who could have obtained a judicial lien "whether or not such a creditor exists." See 124 Cong. Rec. H 11,097 (Sep. 28th, 1978); S 17,413 (Oct. 6, 1978); 4 Collier on Bankruptcy ¶ 544.01 n. 3 (15th ed. 1982). It makes no sense to allow trustees to hypothecate creditors but require that these *hypothetical* creditors have *actual* claims.

2. *Windfall.* A basic premise of the dissent is that the cattle sale proceeds may exceed the creditors' claims and the debtor will keep this excess. Absent Shamrock's consent, this will not happen because Shamrock surely has an unsecured claim, and this claim should be paid before there is any distribution to the debtor. 11 U.S.C. § 726(a) and 1129(a)(7). This claim would be based on the loss to Shamrock and the obvious unjust enrichment to the debtor.[1] The policy favoring recording these cattle agreements is not so strong that violators must lose *both* their cattle *and* their claims against the bailees. See *In re Verco Industries,* 704 F.2d 1134 (9th Cir.1983) where similar equitable principles were discussed.

3. *Reliance.* Finally, I disagree with the dissent's reasoning that anyone who relies on the cattle should inspect the brands. Even if reliance is required, many creditors would extend credit on the basis that Black & White owned thousands of cows, but these creditors would not be expected to examine each cow's brand. By way of example, a telephone utility, a hardware merchant, and a newspaper carrier could advance credit in good faith reliance on the apparent ownership without individual brand examination at a pasture or feed lot.

HUGHES, Bankruptcy Judge, dissenting:

I respectfully dissent.

§ 502(h) or be based upon subrogation to the claims of those paid with the proceeds of Shamrock's cattle.

I am not as confident as the trial court or Black & White Cattle Co. that the California courts would order Shamrock's undisputed title forfeited in favor of a levying creditor. Furthermore, I believe the trial court's judgment is premature even if I am mistaken on the forfeiture issue.

## I

The state law must be examined in light of the material facts: (1) all of the cattle (with minor exceptions) were owned by Shamrock Farms Company before delivery to Black & White; (2) Black & White acknowledged Shamrock's ownership in writing prior to delivery of any cattle and agreed in writing that title remained in Shamrock at all times; (3) Black & White never questioned Shamrock's ownership either before or after delivery and took no actions after delivery inconsistent with Shamrock's ownership; (4) all cattle placed on the feedlot carried Shamrock's brands as registered in California plus four eartags which showed Shamrock's ownership and identified the cattle for inventory purposes; (5) the cattle industry relies on brands as evidence of ownership; (6) a prudent creditor would not extend credit on the basis of the apparent ownership of cattle without first checking the brands; (7) the 3535 cattle at issue have a value of $2.4 million; (8) Shamrock (with certain exceptions first noted above) never purported to sell or buy any of these cattle to or from Black & White; (9) Shamrock owes Black & White $67,000 or thereabouts in outstanding feed bills and is not a trade creditor of Black & White (i.e., Shamrock's interest in the cattle is as an owner, not as a conditional vendor or secured creditor); (10) Shamrock not only paid others for the cattle delivered to Black & White but paid Black & White $1.5 million for feed and services for its cattle; and (11) Black & White does not dispute Shamrock's ownership even today. All of these facts are established for purposes of the motion for summary judgment.

Nor does Black & White invoke California Civil Code § 2980.5 in order to defeat Shamrock's undisputed and unassailable title to each head of cattle. Were Black & White to do so, it would be met by an array of defenses, not the least of which are that Calif. Civil Code § 2980.5 by its terms:

1. operates only in favor of
   a. purchasers from Black & White, or
   b. creditors of Black & White,
   and
2. then only as to those purchasers and creditors who have no actual knowledge of Shamrock's reservation of title.

Black & White is neither a purchaser from itself, nor a creditor of itself. Furthermore, Black & White had full knowledge of Shamrock's title and of the contents of its agreement with Shamrock.

As a debtor-in-possession under its Chapter 11 case, Black & White has the powers and duties of a trustee in bankruptcy. 11 U.S.C. § 1107. A trustee in bankruptcy succeeds to the property rights (which are subject to the limitations) of the debtor, 11 U.S.C. § 541(a), but is also entrusted with certain powers of the debtor's creditors. In either event, the trustee in bankruptcy is a fiduciary who exercises the powers of the debtor and the debtor's creditors for the benefit of those creditors.

One such power, found in 11 U.S.C. § 544(a)(1), is that of a creditor of Black & White who extended credit and obtained a lien on property of the debtor, both at the moment bankruptcy commenced. To the extent that such creditor has rights in derogation of Shamrock's title under Calif.Civ. Code § 2980.5, that power can be exercised by Black & White as a fiduciary on behalf of its creditors.

In summary, Black & White, the partnership that contracted with Shamrock, cannot and does not assert any claims against Shamrock for itself or for its partners. In its fiduciary role as debtor-in-possession, however, it asserts the powers of a trustee in bankruptcy, which powers include those of a creditor who extended credit and obtained a judicial lien on property of Black & White at the moment of bankruptcy, and it asserts these powers for the benefit of Black & White's creditors. Thus, it is this hypothetical creditor who invokes Calif.Civ. Code § 2980.5.

## II

Calif.Civ.Code § 2980.5(b) provides that unless Shamrock's bailment contract ·with Black & White was recorded the provisions reserving Shamrock's ownership of the cattle that it delivered to the feed lot "shall be void as to any . . . creditor or encumbrancer who, without actual knowledge of such provision, in good faith . . . acquires a . . . lien thereon by . . . attachment or levy, before the contract is so recorded" and "any other creditor who . . . becomes a creditor after possession of the chattels is delivered . . . and before the contract is so recorded . . ." It further provides that, as against such persons, "title . . . in any such chattels shall be conclusively presumed to have been transferred to the lessee [bailee] unless the contract is so recorded."

Shamrock's feed-lot contract was not recorded. Furthermore, the hypothetical creditor's rights are exercised by the trustee "without regard to any knowledge of the trustee or of any creditor," 11 U.S.C. 544(a).

Shamrock's principal argument is that the trustee's hypothetical creditor did not extend credit or obtain a judicial lien in good faith because all of Shamrock's cattle carried its brand when they arrived at the feed lot and at all times thereafter. The brands, it argues, put everyone who relied on the cattle in extending credit to Black & White on constructive notice of Shamrock's ownership, thus depriving them of any good faith belief that the cattle belonged to Black & White. Shamrock also argues that the statute does not protect those creditors who did not rely on the cattle in extending credit. Shamrock contends that the hypothetical creditor is one or the other and thus cannot cause a forfeiture of Shamrock's title.

I am persuaded by the thrust of Shamrock's arguments.

## A

Given its historical context, it seems likely that the California courts would find Calif.Civ.Code § 2980.5 applicable only to creditors who were liable to be aware of the cattle and were therefore subject to being misled by the appearance of ownership created by Black & White's possession of Shamrock's cattle.

### 1

As noted by the majority, this history dates from *Twyne's Case,* 3 Coke, 80b, 76 Eng.Rep. 809 (1601), which has similarities to the case on appeal. Pierce sold his sheep to Twyne but retained them in his possession and "marked them with his own mark." *Id.,* at 811. When a creditor of Pierce levied on the sheep, Twyne asserted ownership. Twyne was convicted of fraud, based on the misleading appearance of ownership that was created by Pierce's possession. The court condemned the sale to Twyne for its secrecy, stating that "secrecy is a mark of fraud." *Id.,* at 814.

*Twyne's Case* is an example of a sale-in-place, but personal property secret titles or liens can also arise from conditional sales and bailments. Statutes seeking to validate such transactions while avoiding secrecy typically provide for public recordation of ownership or lien retention documents. Today in California, conditional sales are controlled by the state's version of the Uniform Commercial Code. Its sale-in-place statute is Calif.Civ.Code § 3440; California Civ. Code § 2980.5 is a bailment statute applicable only to dairy cattle. The last two statutes differ fundamentally only in that the person in possession is a vendor under one statute and a bailee under the other.

The purpose of these and related statutes is to protect creditors and purchasers "against the evils of secret liens and the secret disposal of assets to the detriment of those who *presumably relied* on the existence of these assets when they extended credit". *Menick v. Carson,* 96 F.Supp. 817, 819–20 (S.D.Cal.1951). (Emphasis supplied). In *Menick,* the court construed Calif.Civ. Code § 3019 by reference to § 3440. Likewise, the courts have emphasized the purpose of Calif.Civ.Code § 2980.5:

> Such legislation . . . has been based on the public policy that secret liens should be avoided . . .

*Calva Products v. Security Pac. Nat. Bank,* 111 Cal.App.3d 409, 419, 168 Cal.Rptr. 582, 587 (1980). Legislation of this type is justified, the same court said,

> on the theory that the bailor is estopped to assert title to goods where he or she . . . helped to create the appearance of ownership of the goods on the part of the bailee.

*Id.,* at 418, 168 Cal.Rptr. at 587.

Indeed, it has been held that Calif.Civ. Code § 2980.5 does not "arbitrarily, capriciously or irrationally deprive[ ] the bailors of a vested right," *Id.,* at 417–18, 168 Cal. Rptr. at 586, precisely because it represents "the Legislature's economic decision that *commercial lenders should be protected against secret liens and titles...*" *Id.,* at 420, 168 Cal.Rptr. at 588. (Emphasis supplied).

Thus, Calif.Civ.Code § 2980.5 and all like statutes serve to validate such transactions by permitting the purchaser or creditor to protect himself from secret liens, i.e., the transactions are authorized on condition that public notice is given.

### 2

The evil addressed by the statutes being the secret lien, i.e., the misleading appearance created by possession by one who is not the owner, it stands to reason that such statutes may be invoked only by those who are liable to be misled.

An appearance can be misleading only to an observer; ownership of property can be secret only to one who knows of the property. Black's Law Dictionary defines *secret* as:

> Concealed; hidden; not made public; particularly, in law, kept from the knowledge or notice of persons liable to be affected by the act, transaction, deed, or other thing spoken of.

There are no secret liens as to those who are not liable to be affected by a bailee's possession of property; appearances cannot mislead those for whom there is no appearance.

It is not surprising, therefore, that courts have refused to permit creditors who were not prejudiced by misleading appearances to invoke chattel mortgage recording statutes. *Mid-Continent Supply Co. v. Harman,* 394 P.2d 476, 480 (Okl.1964); *Waterman v. Hantke,* 190 Wis. 1, 207 N.W. 946, 948 (1926).

While I am aware of no California case precisely on point, the cases enforcing Calif. Civ.Code § 2980.5 are consistent with the foregoing rule. Without exception the creditors who sought to invoke the statute were secured creditors who implicitly relied on the appearance of ownership in extending credit or, at the very least, in obtaining their security interest. In *Calva Products v. Security Pac. Nat. Bank,* supra, the creditor who invoked Calif.Civ.Code § 2980.5 had a security interest in all of its debtor's livestock and farming equipment. In *Merced Production Credit Assn. v. Bayer,* 222 Cal.App.2d 793, 35 Cal.Rptr. 511 (1963), the creditor who invoked the statute held a mortgage on its debtor's 38 cows "together with all increases." *Id.,* at 795, 35 Cal.Rptr. 511. In *Lawler v. Solus,* 101 Cal.App.2d 816, 226 P.2d 348 (1951), the creditor who unsuccessfully sought to invoke the statute held "a mortgage of personal property [of its debtor], including 68 cows." *Id.,* at 817, 226 P.2d 348. In *United States v. Foster,* 123 F.2d 32 (9th Cir.1941), the creditor who unsuccessfully invoked a related statute governing conditional sales of animals held a chattel mortgage that covered ten head of cattle.

Indeed, the California courts have held that a recording statute may be invoked only by those for whose benefit it is intended. The case of *Morghee v. Rouse,* 224 Cal.App.2d 745, 37 Cal.Rptr. 112 (1964) construed a statute that permitted a surviving husband "to sell, lease, mortgage or otherwise deal with and dispose of the community real property, unless a notice is recorded . . . to the effect that an interest in the property is claimed by another under the wife's will." *Id.,* at 748–49, 37 Cal.Rptr. 112.

The husband made a gift of the property and the donee sought to invoke the statute against a party claiming under the will.

The court construed the statute "as applying only to transactions involving a transfer to a bona fide transferee for value" notwithstanding the "otherwise ... dispose" language of the statute. Among its reasons:

> The provision for recordation of the notice of claim ... are, again, consistent with a transaction in which a bona fide transferee for value is involved; they serve no function in case of a donee from the husband who, not ordinarily looking a gift horse in the mouth, would scarcely search the public records to determine the validity of the benefice.

*Id.,* at 749, 37 Cal.Rptr. 112.

While not controlling, *Morghee v. Rouse* is persuasive authority for the rule that Calif.Civ.Code § 2980.5 is applicable only to those who are liable to be misled by possession.

Such a construction does not do violence to the ordinary meaning of the words employed by the legislature. Those persons for whom the statute expressly applies are (1) "any purchaser, creditor or encumbrancer who ... purchases the chattels ... or acquires a security interest therein or lien thereon by security agreement, attachment or levy, before the contract is so recorded" and (2) "any other creditor who ... becomes a creditor after possession of the chattels is delivered and before the contract is so recorded..." Calif.Civ.Code § 2980.5.

It is evident that the persons protected by part (1) of the statute must know of the bailee's possession in order to acquire an interest in the property by purchase or by consensual or judicial lien. What about those protected by part (2)?

Appellee argues that part (2) applies to anyone who extends credit to the bailee, regardless of the creditor's knowledge of the chattels in the bailee's possession. It suggests that the telephone company is such a creditor. Its argument, in effect, is that the telephone company could invoke Calif.Civ.Code § 2980.5 to defeat the bailor's title as to any bills incurred by the bailee during the bailment and prior to recordation of notice, even though it knew nothing of the bailee's business and even less about property in the bailee's possession.

The appellee's construction, however, reads as much into the statute as appellant's because both take up an issue that is not addressed by the statute: the relevance of the bailee's possession to the act protected (i.e., lien acquisition or credit extension). Appellee says there is none, appellant that there is. The statute being silent, neither construction abridges the plain meaning of the words used by the legislature.

Given the statute's purpose, which is to protect against secret liens fostered by the misleading appearance of possession, only one construction is possible: the telephone company cannot invoke the statute unless its credit was extended in reliance on, or at least with an awareness of, the bailee's possession.

Thus, I conclude that California courts would construe Calif.Civ.Code § 2980.5 as being applicable only to those creditors who are liable to be affected by property in the bailee's possession when they extend credit or obtain a lien.

### B

Possession of property is an indicia or badge of ownership of that property. Possession by anyone other than the owner, therefore, can be misleading. In the case of dairy cattle placed on a feed lot, the California legislature has determined that possession is so misleading as to amount to constructive fraud, the miscreant being the true owner who participated in the potential deception. Accordingly, any person who was liable to be affected by the presence of Shamrock's 3535 head of cattle on Black & White's feed lot when extending credit and anyone who attempted to acquire a lien in the cattle is permitted to treat them as Black & White's, provided he acted in good faith and did not know that Shamrock had reserved title.

The question I now address is whether anything short of actual knowledge of the parties' title reservation agreement pre-

vents a creditor from invoking the statute and whether, in particular, brands serve this purpose. I conclude that the brands satisfy every purpose served by recordation and therefore prevent application of Calif. Civ.Code § 2980.5. I rest my conclusion on the doctrine of constructive notice, although it could be said to rest as well on the absence of a good faith reliance on appearances.

1

Calif.Civ.Code § 2980.5 is applicable by its terms only to those "without actual knowledge of such provision", i.e., a "provision therein reserving title or property in any such chattels to the [bailor] after possession of the chattels is delivered to the [bailee]..." Literally read, the statute can be invoked by a creditor who has actual knowledge of the bailor's title so long as he does not know of the specific provision on which title is based. The cases do not read the statute that literally and focus on knowledge of ownership rather than on knowledge of the provision reserving title. *Calva Products v. Security Pac. Nat. Bank,* supra, 111 Cal.App.3d at 416–17, 168 Cal. Rptr. at 586 ("actual knowledge of plaintiffs' ownership interest ... actual knowledge of another ownership interest ... notice of Calva's and Chase's ownership ..."). See also, *Lawler v. Solus,* supra.

Indeed, the cases differ only on who has the burden of proof regarding notice or lack thereof. The most recent case, *Calva Products,* placed the burden on the owners:

> Plaintiffs made no showing that Security Pacific had notice of their ownership interest before it acquired a security interest in the calves.

*Id.,* at 417, 168 Cal.Rptr. at 586. This is in apparent contradiction to the rule stated in *Lawler v. Solus,* supra, 101 Cal.App.2d at 818, 226 P.2d 348:

> upon title being shown to be in Soto, the burden was on [the creditor] to prove that he did not have notice that the cows belonged to Soto.

Similarly, the Circuit Court of Appeals viewed this as the creditor's burden in *United States v. Foster,* 123 F.2d 32, 34 (9th Cir.1941) where it stated that

it does not appear anywhere in the record that appellant actually did not have notice of the fact that the title to the cattle was in Foster.

While there may be doubt as to who has the burden of proof on the issue, it is clear that either notice or knowledge of ownership, not only knowledge of the provision in the bailment contract reserving title, renders Calif.Civ.Code § 2980.5 inapplicable.

2

Constructive notice of ownership can be found as a matter of law or of fact. Thus, had Shamrock recorded its contract, knowledge of the contents would be imputed to all of Black & White's creditors as a matter of law. Constructive notice also arises from such facts as would put a reasonable man on inquiry. 3 Witkin, Summary of California Law, p. 1896. Possession of real property gives constructive notice of ownership if it is sufficient to put a prudent man on inquiry. *Sanguinetti v. Rossen,* 12 Cal.App. 623, 632, 107 P. 560 (1906).

But possession is not the only fact or indicia of ownership that can put a prudent man on inquiry. Because the appeal is from a summary judgment, we have no alternative but to accept branding as such a fact. Appellee did not controvert appellant's expert evidence that a prudent man would not extend credit on the basis of ownership of cattle without checking brands. I thus conclude from the record that Shamrock's brands gave constructive notice of its ownership as a matter of fact.

3

I am also persuaded that cattle branding gives constructive notice in California as a matter of law if the brand is properly registered or recorded.

Although the legislature has not addressed this precise issue, it has evaluated the relative strengths of possession and branding for purposes of proving title. California Agricultural Code § 20609 provides:

> In every suit at law or in equity, if the title to any animal is involved, proof of the brand of the animal establishes a

rebuttable presumption that the owner of the brand was the owner of the animal at all times during which the brand was duly recorded as provided in this code. The official comment to this statute notes that this presumption affects the burden of proof and prevails over the presumption of ownership created by possession, a presumption limited to the burden of producing evidence. The possession presumption is found in California Evidence Code § 637:

> That things which a person possesses are presumed to be owned by him.

Thus, when title itself is at issue, the presumption of ownership that flows from possession is subordinate to the presumption of ownership that flows from a duly recorded brand. I can see no reason why the presumption of ownership that Calif. Civ.Code § 2980.5 accords to possession is not offset by the presumption of ownership created by branding when knowledge or notice of title is at issue. (Appellee notes that Calif.Civ.Code § 2980.5 creates a conclusive presumption of ownership in contrast to the rebuttable presumption of branding. However, that argument begs the question to be decided; the conclusive presumption arises only if the creditor did not have notice of ownership).

The California courts have not addressed the question of whether a duly recorded brand puts a prudent man on inquiry as a matter of law for purposes of Calif.Civ. Code § 2980.5 or related sale-in-place statutes. It has been addressed by the Supreme Court of Montana. *Cady v. Zimmerman,* 20 Mont. 225, 50 P. 553 (1897).

Graves sold and delivered sheep to Cady, who branded them and returned them to Graves under an arrangement whereby Graves acted as Cady's agent. Graves kept Cady's sheep separate from others in his possession. A creditor of Graves caused Zimmerman, the sheriff, to levy attachment on Cady's sheep. Thereafter, Cady took judgment for conversion against Zimmerman, and the Supreme Court affirmed. The question on appeal was whether "there was sufficient delivery of the property and change of possession thereof at the time of

the sale to take the case out of the statute of frauds."

In holding that there was, the court relied on the brands:

> [B]y this brand plaintiff's sheep were distinguished from the other sheep belonging to Graves or anybody else, so that by such branding creditors of Graves might have been presumed to have notice that the ownership in the sheep thus marked had been changed from that of Graves to the plaintiff or some one else.

*Id.,* 50 P. at 554.

None of the cases cited to us, only two of which mention branding, conflict in any way with *Cady v. Zimmerman.* In *Lawler v. Soto,* supra, 101 Cal.App.2d at 818, 226 P.2d 348, the seven cows levied on "were branded A° on the right shoulder." Nothing else is said about the brands, and we do not know whose brand this was or whether it was recorded. The brand did not enter into the decision, which was in favor of the owner and was based on the absence of any evidence that the creditor "did not have notice of Soto's title when he took the mortgage."

The failure of the court to treat the brand as relevant suggests that it was not in this case. Assuming, however, that the brand was Soto's, was duly recorded and was placed on the cows before delivery, the case means only that an alternative ground for decision was ignored. It does not suggest that the court thought that a brand does not give constructive notice of ownership under any circumstances.

Brands on dairy cows were discussed in *Merced Production Credit Assn. v. Bayer,* 222 Cal.App.2d 793, 35 Cal.Rptr. 511 (1963), but not in terms of notice:

> [T]he mere branding of cattle not owned by the brander does not serve to convey title to him ...

*Id.,* at 799, 35 Cal.Rptr. 511. This truism sheds no light on the question of whether and to what extent branding gives notice of ownership.

The branding took place in this case "[a]fter these initial transactions" at a time

when "an attempt was made ... to indicate that there was a conditional sale of all of the cows *formerly* owned by Bayer..." (Emphasis supplied). Thus "Bayer placed his brand on all of the 27 cows" with the buyer's consent after they had been delivered to the buyer. The prevailing chattel mortgage holder could not have been affected by the branding because its rights in the cattle arose before the brands were affixed.

I believe the California courts would hold as a matter of law that a duly recorded brand puts a prudent man on inquiry as to ownership and therefore constitutes constructive notice of ownership.

### 4

Appellee argues that branding is not a substitute for compliance with Calif.Civ. Code § 2980.5 because "the California Legislature would not have enacted *both* the branding requirements of the California Agriculture Code *and* the recordation requirements of California Civil Code § 2980.5 if it intended that compliance with the former would excuse compliance with the latter." In short, appellee argues that any reading of constructive notice from branding assumes "the implied repeal of California Civil Code § 2980.5 by the branding statute".

This overlooks important facts: not all cattle are branded, brands are not always those of the true owner (see, e.g., *Twyne's Case*), and only duly recorded brands are effective in California. The constructive notice effect of brands does not render Calif.Civ.Code § 2980.5 meaningless. The statute would be fully applicable under the facts of *Twyne's Case,* for example.

### C

The hypothetical creditor created by 11 U.S.C. § 544(a)(1) for the benefit of Black & White's actual creditors is precluded from obtaining relief under Calif.Civ.Code § 2980.5 because no creditor, real or imagined, could do so.

Shamrock's brand was duly recorded in California. It was carried by all of the cattle on Black & White's feed lot from the moment they arrived. Any creditor who was liable to know of the cattle in Black & White's possession when extending credit to Black & White or when attempting to acquire a lien on the cattle was equally liable to know that they were branded. As he could have examined the record of brands, he is charged with constructive notice of Shamrock's ownership.

Any other creditor is outside the protection of Calif.Civ.Code § 2980.5.

The trustee in bankruptcy is affected by such constructive notice notwithstanding the provision in 11 U.S.C. § 544 that disregards "any knowledge of the trustee or of any creditor..." *McCannon v. Marston,* 679 F.2d 13 (3rd Cir.1982); *In re Richardson,* 23 B.R. 434, 439 (Bkrtcy.D.Utah 1982). Since every creditor can be hypothesized either as being unaffected by the statute or as having constructive notice, the trustee in bankruptcy can fare no better.

I would therefore reverse the summary judgment.

### III

Even if a trustee in bankruptcy can invoke Calif.Civ.Code § 2980.5, I nevertheless am persuaded that the court erred in directing payment of the $2.4 million purchase price to the debtor-in-possession at this stage of the Chapter 11 case. I reach this conclusion by considering state law, although appellants raised the issue as a matter of federal law. I believe they amount to much the same thing.

### A

As debtor-in-possession, Black & White filed the adversary proceeding that invoked Calif.Civ.Code § 2980.5 on the same day it filed the Chapter 11 case as debtor. Nowhere in the record is there evidence that a plan has been confirmed, 11 U.S.C. § 1129(a), or that the amount of unsecured creditor claims that will not be satisfied by the debtor's plan has been ascertained. More to the point, the record does not reflect the total claims that are being asserted for purposes of invoking Calif.Civ.Code § 2980.5.

The amount of the creditors' claims is not often an issue in cases under Calif.Civ.Code § 2980.5 and related statutes because the creditors' claims usually exceed the value of the property subject to the bailment. This was true in *Calva Products,* supra, which involved 340 calves, as well as in *Merced Production Credit Assn. v. Bayer,* supra (27 cows), *Lawler v. Solus,* supra, (7 cows) and *United States v. Foster,* supra (10 cows).

Here, however, there are 3535 cows worth $2.4 million and it cannot be assumed without proof that the allowable claims against Black & White total this amount. The following discussion, then, is based on the possibility of a residue remaining after satisfaction of all claims asserted by Black & White's creditors. Any residue belongs to Shamrock, rather than to Black & White.

### 1

The owner's title is not avoided absolutely by Calif.Civ.Code § 2980.5. Title is void *as to* creditors entitled to invoke the statute and not as to others. Instead, the statute alters priorities, *Calva Products v. Security Pac. Nat. Bank,* supra, 111 Cal.App.3d at 419, 168 Cal.Rptr. at 587, between lien and ownership claimants. ("Such legislation establishing new priorities of interest...").

This principle is codified as to fraudulent conveyances:

> Where a conveyance ... is fraudulent as to a creditor, such creditor ... may ... (1) Have the conveyance set aside ... to the extent necessary to satisfy his claim...

Calif.Civ.Code § 3439.09.

It follows that the amount of the creditor's claim must be proved in order to support relief under Calif.Civ.Code § 2980.5, and that the owner's title is voided only to the extent necessary to satisfy the claim. Thus if Black & White's creditors sued in the California courts, they could not defeat Shamrock's title by more than the amount of their claims. For example, should their total claims when allowed aggregate $500,-000, Shamrock's title to the remaining $1.9 million worth of cattle would be unaffected.

Such was the holding in *Heffernan v. Bennett & Armour,* 110 Cal.App.2d 564, 243 P.2d 846 (1952), involving a class action to set aside intentionally fraudulent conveyances. The trial court declared the transfers entirely void as to all creditors, i.e., "as if they had never been made", and this portion of the judgment was reversed because it was not limited to the amount of the total claims. *Id.,* at 596, 243 P.2d 846.

The trial court also erred in leaving the task of apportioning the property among creditors to subsequent out-of-court proceedings in which the fraudulent transferee could not participate. *Id.,* at 586, 243 P.2d 846. This denied the transferee his due process right "to require each [creditor] to prove his claim, and to present every defense he may have to each." *Id.,* at 587, 243 P.2d 846. The transferee's right to insist that each creditor prove his claim against the fraudulent transferor exists because "[t]he residue, if any, after the claims of creditors are satisfied, goes to him." *Id.,* at 586, 243 P.2d 846.

The court found further error in an award of attorneys fees to the plaintiff, citing *Miller v. Kehoe,* 107 Cal. 340, 40 P. 485 (1895), as holding "it [is] improper to allow such fees, for if allowed they would come out of the residue" that belongs to the transferee. *Id.,* 110 Cal.App.2d at 588, 243 P.2d 846.

This state law controls actions brought by trustees in bankruptcy as well inasmuch as the rights conferred on the trustee in bankruptcy by 11 U.S.C. § 544(a) are no more or less than the rights of the creditors of Black & White. Because the judgment appealed voids Shamrock's title to all of the 3535 heifers without regard to the amount of the claims represented by the trustee, the judgment is premature if not erroneous.

### 2

The judgment is necessarily premature, in my view, because it is not possible to determine the amount of claims represented by the trustee until all claims have been filed and allowed. In a Chapter 11 case, this ordinarily is not possible of calculation until after confirmation of the plan. 11

U.S.C. § 1111(a), Interim Rule of Bankruptcy Procedure 3001(b)(3). (Claims may be filed prior to approval of the disclosure statement unless a different time is fixed by the court).

Even when the gross amount of the unsecured claims are known, the amount of the debtor's assets, 11 U.S.C. § 541, available to satisfy these debts must be determined, because Shamrock's title cannot be forfeited until Black & White's assets have been applied to the claims of its creditors. In the absence of actual intent to defraud, a creditor must show that his claim cannot be satisfied without recourse to fraudulently conveyed property. *Bank of Willows v. Small,* 144 Cal. 709, 716, 78 P. 263 (1904). Furthermore, failure to apply all of the debtor's assets to the gross claims would cause Calif.Civ.Code § 2980.5 to operate in favor of the debtor, contrary to its express terms.

In summary, the judgment below is erroneous, in my view, because it does not limit the avoidance of Shamrock's title to the amount of the trustee's claims after they have been reduced by the amount of the debtor's assets. It may not be possible to determine the total claims and assets available to satisfy those claims until after confirmation of a plan.

### 3

Appellee's judgment was premature, as I see it, but not its action. California gives the trial court discretion under such circumstances to protect Black & White's creditors in a variety of ways. Calif.Civ.Code § 3439.10. Thus, the court could restrain Shamrock from disposing of its property. Calif.Civ.Code § 3439.10(a). Presumably, the bond posted by Shamrock below would be satisfactory assurance that the creditors are fully protected as to any judgment eventually rendered. *Compare,* 11 U.S.C. § 723(b).

### B

Appellee argues that delaying payment of the funds representing the cattle placed on the feed lot until the bankruptcy court determines the net amount of the claims is not contemplated by the Bankruptcy Code and would create an "administrative nightmare" and an "algebraic disaster." It also suggests (although in a different context) that calculations of net claims (i.e., gross claims reduced by the debtor's assets) is not appropriate in a Chapter 11 case "where the ultimate dividend under a plan of reorganization will depend upon the provisions of the plan and may include, or may even be limited to, non-cash consideration, such as notes and other securities."

### 1

Even assuming the problems feared by appellee, the argument misses the point that the issue is not one of bankruptcy procedure; instead the issue is whether—and to what extent—Shamrock's title may be forfeited under state law. It can only be forfeited pursuant to the California law invoked by appellee, and that law permits forfeiture only to the extent of the creditors' claims that cannot be satisfied from the debtor's assets.

Once Shamrock placed the net amount of Black & White's debts in issue, appellee was put to the proof and, as I see it, judgment did not lie under Calif.Civ.Code § 2980.5 until that proof was satisfactory. If the nature of Black & White's plan of reorganization makes that proof difficult, the solution lies in the nature of Black & White's plan rather than in disregard of the law Black & White seeks to invoke.

### 2

In fact, however, any plan devised by Black & White must meet the best interest of creditors test in order to be confirmed, and the best interest test requires that Black & White's assets be valued regardless of the nature of its plan. Similarly, all of the creditor claims must be fixed, regardless of the plan.

A Chapter 11 plan may be confirmed only if each claimant has either accepted the plan or will receive an amount "not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1129(a)(7)(A)(ii). This

is the best interest of creditors test and it is imposed if only one of Black & White's creditors does not accept the plan. For all practical purposes, the best interest test is inevitable; in any event, 100% acceptance cannot be assumed in advance of confirmation.

Of course, withholding judgment until the best interest facts are found means that the funds will not be available to appellee until then. But since the funds are recovered for the benefit of creditors, and since no distribution can be made to creditors until after confirmation of the plan, no perceptible harm can result.

### 3

In any event, and contrary to appellee's contention, such delay is contemplated by the Bankruptcy Code in cases such as this involving partnerships. The rights of a trustee in a partnership case against the general partners are controlled by 11 U.S.C. § 723:

> (a) If there is a deficiency of property of the estate to pay in full all claims allowed in a case under this title concerning a partnership, then each general partner in such partnership is liable to the trustee for the full amount of such deficiency.
> (b) . . . Pending determination of such deficiency, the court may order any such partner to provide the estate with indemnity for, or assurance of payment of, any deficiency recoverable from such partner, or not to dispose of property.

It is apparent that the general partners cannot be required to pay any funds to the trustee until a deficiency has been determined, i.e. until the total claims have been fixed and the liquidated value of assets determined.

Appellee puts it this way:

> There is no liability of any partner unless there is a deficiency in the assets of the estate. Before any cause of action can be stated against any partner under 11 U.S.C. § 723(a), it is necessary for the trustee to liquidate all other assets of the estate and determine the amount of the claims against the estate.

Yet the delay that is legislated in section 723(a) is the very delay Shamrock requests (and, I believe, state law demands) and which appellee calls an administrative nightmare that is not contemplated by the Code. See also, *Page v. Rogers,* 211 U.S. 575, 580–81, 29 S.Ct. 159, 161, 53 L.Ed. 332 (1909) sanctioning a similar delay in turnover.

Section 723(a) not only establishes a federal statutory precedent for the delay sought by Shamrock, it provides further reason for such delay. Just as the debtor's assets must be applied to the creditors' claims before Shamrock's title to any of its cattle may be forfeited, so the general partners' assets must be called upon before any of Shamrock's cattle (or their proceeds) can be turned over to Black & White's creditors. Calif.Civ.Code § 2980.5 cannot be invoked by Black & White, or its general partners, directly or indirectly. By its express terms the California statute is available only to purchasers, creditors and encumbrancers.

Furthermore, as between the debtor (including its partners) and a general creditor, the debtor's rights to property of the estate are subordinate. 11 U.S.C. § 726(a)(2), (6). This relative priority is enforced in Chapter 11 cases. 11 U.S.C. § 1129(b)(2)(B), (C). I assume that Shamrock would succeed by subrogation to the claims that are satisfied by its forfeiture and thus would have a right to be paid in full before any property is distributed to either the debtor or the partners.

Appellee argues however that section 723(a) "applies only in cases under Chapter 7 . . . and is inapplicable in this Chapter 11 case." Appellee is correct only in that the section is not expressly applicable to Chapter 11. Section 723 is incorporated into Chapter 11 by the best interest of creditors test discussed above. In Shamrock's words:

> Since all creditors are entitled to receive at least as much as they would receive if the general partners contributed the full amount of any deficiency in the estate, they must necessarily do so before a plan can be confirmed.

528

Accord, House Report No. 95–595, 95th Cong., 1st Sess. 412 (1977), U.S.Code Cong. & Admin.News 1978, p. 6368, stating in reference to the best interest of creditors test found in section 1129(a)(7): "Also applicable in appropriate cases will be the rules governing partnership distribution under proposed 11 U.S.C. § 723 . . ."

C

In summary, if Calif.Civ.Code § 2980.5 is available at all to appellee in its fiduciary capacity on behalf of its creditors, which I think not, the statute cannot be fully invoked until a deficiency has been established. In the ordinary case, that deficiency would be taken for granted by all parties. In this case, however, such an assumption is not warranted because of two factors: the enormity of the possible forfeiture and the liability of the general partners to satisfy any deficiency once it is established. In any event, the deficiency is an element in appellee's case unless waived, and Shamrock has not waived it.

(As stated earlier, Shamrock treated this issue in terms of federal law whereas I have approached it in terms of state law. In fact, Shamrock raised both arguments:

Neither the debtor nor its general partners is entitled to benefit from either § 2980.5 [state law] or § 544(a) [federal law], both of which are limited to creditors.

Nevertheless, it emphasized that the avoiding powers of 11 U.S.C. § 544(a) and related sections may be exercised by the trustee only for the benefit of creditors. *Whiteford Plastics Co. v. Chase National Bank,* 179 F.2d 582 (2d Cir.1950); *In re Oceana International, Inc.,* 376 F.Supp. 956 (S.D.N.Y. 1974); *Matter of Schwab,* 613 F.2d 1279, 1281 (5th Cir.1980); *In re Centennial Industries, Inc.,* 12 B.R. 99 (Bkrtcy.S.D.N.Y.1981). My analysis explores the same issue as a matter of state law).

On this issue, I would vacate the judgment and remand for further proceedings that permit appellee to satisfy any deficiency that may exist from the general partners' assets before entering judgment against Shamrock.