### BROWNE et al. *v.* STECK.

STAMPS — *affixed by collector of internal revenue.* In the month of February, 1871, the collector of internal revenue of the proper district had authority, under several acts of congress, to affix revenue stamps to instruments not properly stamped at the time they were made, and to remit the penalty incurred by the omission to stamp them.

EVIDENCE — *objection that 'it is not full.* That a witness has not fully disclosed the nature and extent of his authority to indorse a promissory note is not a valid objection to his deposition. If a full explanation is desired, the party may call for it upon cross-examination.

PRACTICE — *order of introducing testimony.* The order in which testimony shall be introduced rests in the discretion of the court in which the cause is tried.

NEW TRIAL — *not allowed where testimony is conflicting.* Where the testimony of two witnesses conflicts, a new trial will not be granted, and one of the witnesses being a party to the suit, the court was not bound to accept his testimony.

DAMAGES — *for failure to pay money on contract.* An allowance for the failure to pay at maturity money due by contract, is regarded as damages for the breach of contract, not as interest on the money due.

*The measure* of such damages is the value of the use of the money during the time for which it has been withheld.

*May be regulated by contract.* The stipulation of the parties as to the rate of interest after maturity may be accepted as the measure of damages, provided they adhere to what may be reasonably sufficient to compensate the loss arising from the breach of contract.

*If, however,* the rate of interest specified in the contract greatly exceeds the real value of the money, it is to be regarded as a penalty for the non-payment of the principal sum, rather than a just recompense for detaining it.

*In the absence of evidence* as to the current rate of interest at the time the contract was made, the rate specified in the contract may be accepted as the true measure of damages.

### *Error to Probate Court, Arapahoe County.*

THE plaintiff declared upon a note of hand as follows:

$280.                    DENVER, C. T., *May* 7, 1864.

Thirty days after date, we promise to pay to Rogers & Wilcox, or order, the sum of two hundred and eighty dollars for value received, negotiable and payable without defalcation or discount, at Rogers & Wilcox's office, in Den-

ver, Colorado Territory, with interest at the rate of ten per cent per month from maturity until paid.

(Signed)      ROBERT S. WILSON,<br>SAMUEL E. BROWNE.

Several matters were pleaded by the defendants, and the fourth plea of defendant Browne, to which reference is made in the opinion of the court, is as follows:

"And for a further plea in this behalf the defendant, S. E. Browne, says, that the said promissory note, in the first count of the declaration mentioned, is the only cause of action sued on, and that all the other counts are all for the same promissory note and for no other cause whatever, that the said promissory note was executed and delivered to the said firm of Rogers & Wilcox, copartners as aforesaid, before the dissolution of said firm, and that after the dissolution of said firm and after the plaintiff had notice of said dissolution, to wit: on the first day of May, A. D. 1870, in the county aforesaid, the said Henry J. Rogers, one of the said firm of Rogers & Wilcox and in the firm name of Rogers & Wilcox, indorsed the said note to the plaintiff, and this the said defendant is ready to verify."

To which the plaintiff, by leave of court, replied:

1st. That the firm of Wilcox & Rogers was not dissolved at the time of the indorsement of the promissory note to the plaintiff.

2d. That the plaintiff had no notice of the dissolution of the firm of Rogers & Wilcox at the time of the indorsement of the said promissory note to him.

3d. That at the time of the dissolution of the said firm of Rogers & Wilcox, the said Rogers was authorized and empowered by the said Wilcox to indorse the said note to the said plaintiff in the firm name.

4th. That before the dissolution of the firm of Rogers & Wilcox, the said Rogers was authorized and empowered by the said Wilcox to indorse the firm name on the said promissory note after the dissolution of said firm, and issue was joined upon all of said replications.

When the note was offered at the trial it was not properly stamped, and objection being made upon that ground it was carried to the collector of the district who affixed revenue stamps and remitted the penalty as provided for in the statutes referred to in the opinion of the court. The note was then received in evidence notwithstanding the defendants' objection, and the plaintiff rested. Thereupon Robert S. Wilson, one of the defendants, was called and testified as follows:

"I made payments on the note, credited on the back, July 14, 1864, $45; August 29, 1864, $87.15; about the last of June, 1864, can't tell the exact date, Charles Dahler, agent for Ben. Holliday O. Ex. Co., or the agent of Ben. Holliday's Overland Express, either him or N. Stein, paid Rogers $63.80; that was the first payment that was made; I remember telling him I would let him have some county scrip soon; Rogers said I could let it run further; he did not give credit on the note for this payment; Browne knew nothing about it; Browne was my security on the note and they, Rogers & Wilcox, knew it; do not remember the amount of county scrip; I let them have $200 at 45 cents on the dollar, making $90; the scrip was paid in a very short time; about four or five days after; they did business in the same house with Butterfield; I directed Butterfield to pay them some commissions due me, about $70 or $80; that is not the credit for $87.15 on the note; it may be it; Rogers agreed with me if I paid him the fees — $63.80 due from Holliday O. Ex. Co. to me as sheriff, for sale made by me as sheriff, he would let it run until the meeting of the county commissions who met quarterly; do not remember any other payment; I knew at the time the note was paid; I had a conversation with Rogers in 1864 in relation to remainder of the note; cannot remember what he said; Rogers admitted to me that the note had been paid; that is my impression."

Upon cross-examination, witness repeated the same testimony substantially — the defendants then rested, and the plaintiff offered the deposition of Henry J. Rogers, one of

the payees of the note, to which defendants objected, but the objection was overruled and the deposition received. A portion of the deposition referred to in the opinion of the court was as follows :

3d Interrogatory. Were you acquainted with a firm or copartnership doing business under the firm name and style of Rogers & Wilcox ; if yea, state if you know who composed that firm, where they did business, and in what business that firm was engaged ?

Answer. I was acquainted with a firm doing business under the firm name and style of Rogers & Wilcox; Henry J. Rogers and G. H. Wilcox composed the firm of Rogers & Wilcox ; they did business in Denver, Colorado, and were engaged in contracting and banking.

4th Interrogatory. If you say, in answer to the last preceding interrogatory, that you were acquainted with that firm, and that you and one G. H. Wilcox composed the copartnership of Rogers & Wilcox, and did business in Denver, Colorado Territory, state if you had any business transactions with the defendants, Samuel E. Browne and Robert S. Wilson ?

Answer. I did have business transactions with them.

5th Interrogatory. If you say, in response to the last preceding interrogatory, that you had such business transactions, and that the said defendants, Samuel E. Browne and Robert S. Wilson, executed and delivered to the firm of Rogers & Wilcox a promissory note, state the amount of said promissory note, its date, when due and payable, and if indorsed, when indorsed, if you can recollect, and to whom indorsed ; and the payments upon said promissory note, if any. and by whom said payments were made, and when the same were made ?

Answer. Samuel E. Browne and Robert S. Wilson did execute and deliver to the firm of Rogers & Wilcox a promissory note for the sum of $280, dated Denver, May 7, 1864, and payable thirty days from date ; it was indorsed to Amos Steck, I think, some time during the year 1869 ; there were two payments made on the note in the year 1864,

as follows : July 14th, $45 ; August 29th, $87.15 ; these payments were made by Robert S. Wilson.

6th Interrogatory. If you state, in answer to the last preceding interrogatory, that there were payments made upon said promissory note by said Robert Wilson, state if any contract or agreement was made by you or the firm of Rogers & Wilcox, if you know, with the said Wilson, to extend the time of the payment of said promissory note ; or whether any other contract or agreement was made by you or the firm of Rogers & Wilcox, other than appeared on the said promissory note, when you last saw the same ; state, also, when and where you last saw said promissory note ?

Answer. Rogers & Wilcox, nor myself, made any agreement with Wilson other than appeared on the note ; I last saw the note in Denver at the time it was indorsed.

7th Interrogatory. State when the firm of Rogers & Wilcox was dissolved, if the same was dissolved ; also state who had the possession of the said promissory note at the time of said dissolution ; if you say it was dissolved ?

Objected to by defendant Browne because the question is incompetent.

Answer. The firm of Rogers & Wilcox was dissolved in July or August, 1864 ; I had possession of the note at the time of the dissolution.

8th Interrogatory. If you state, in answer to interrogatory number five, that the said promissory note was indorsed to the plaintiff by Rogers & Wilcox, state which one of the firm indorsed the same, and by what authority the same was indorsed, if by any authority ?

Objected to by defendant Browne, because the testimony sought would be incompetent.

Answer. I indorsed the note to Amos Steck ; it was indorsed by authority of an agreement between Wilcox and myself at the time of dissolution.

9th Interrogatory. If you state, in answer to the last preceeding interrogatory, that you indorsed the same in the name of the firm of Rogers & Wilcox, and that you was authorized to indorse the firm name thereon by G. H. Wil-

cox, state when and where that authority was given, whether before, at the time of, or after the dissolution of the said firm of Rogers & Wilcox, if there was a dissolution of said firm or copartnership.

Objected to because it presupposing the proof of a fact is incompetent.

Answer. The authority was given in Denver, Colorado, at the time ef dissolution in July or August, 1864.

The cause was tried to the court without a jury, and judgment entered for the plaintiff.

Messrs. BROWNE & PUTNAM, for plaintiffs in error.

Mr. E. L. SMITH, for defendant in error.

HALLETT, C. J. By the revenue act of 1864 (13 Stat. at Large, 295), an instrument not stamped according to law might be stamped in the presence of the court, and by the act of 1866 (14 Stat. at Large, 143), authority was conferred on the collector of the district to affix the proper stamps in all cases in which they had been omitted. Under the act of 1866, the collector was authorized to remit the penalty prescribed by the act, within twelve calendar months from the 1st day of August in that year, upon satisfactory proof that the omission to stamp the instrument was not intentional. This act was subsequently amended (16 Stat. at Large, 257) as to the time within which the collector should have power to remit the penalty, by striking out the date 1866 and inserting 1871, and thereby it was required that the instrument should be presented to the collector within twelve calendar months from the 1st day of August, 1871. In this instance, the promissory note was presented to the collector in February, 1871, prior to the time fixed by the act of 1870, but we think that the collector had full power to remit the penalty at that time. The limitation expressed in the act of 1866, as well as the amendment of 1870, was designed to insure diligence on the part of the holders of unstamped instruments, and the act should be regarded as extending the time within which the collector might remit

the penalty to the 1st day of August, 1872. The seventh, eighth and ninth interrogateries propounded to the witness Rogers were designed to elicit the facts respecting the indorsement of the note, which, under the issue joined on the fourth plea of defendant Browne, were a proper subject of inquiry. The objection that Rogers did not disclose the nature of the authority given him by Wilcox is not sufficient to sustain an exception to the deposition. Whether the authority to Rogers was by parol, or in writing, and the exact language by which it was conferred, might have been ascertained upon cross-examination, and defendants below having neglected to interrogate the witness upon those points, it was no objection that the testimony was not as full as it might have been made. It is also claimed that this deposition should have been put in evidence before the plaintiff closed his case, the affirmative of the issue being upon him. But if this should be conceded, the order in which testimony is to be introduced rests in the discretion of the court, and it is no ground of error that the deposition was received after the defendants had closed their case. As to the weight of the testimony, there is no such preponderance in favor of the defendants below as requires that a new trial shall be awarded. The witnesses Wilson and Rogers are opposed throughout, and we know of no rule which requires that the court should accept the testimony of one of them in preference to that of the other. It is true that Rogers does not state that the payments of $63.80 and $90, mentioned by Wilson, were not made, but he was asked to state what payments had been made, by which, under the obligation of his oath, he was required to state all payments of which he had knowledge. Nothing less than this would be the whole truth, and when he answered that the payments indorsed on the note had been made, he should be understood as affirming that there were no others. Independent of this, it is by no means clear that a jury or a court trying an issue of fact is bound to give full credit to the testimony of a party to the suit. Ordinarily, the presumption in favor of a verdict will not yield to the uncorroborated testimony

of a party to the suit, or, at all events, this must be the case when the cause comes up on error. A question of greater difficulty arises out of the stipulation in the note to pay interest, after maturity, at the rate of ten per cent per month. The damages awarded for the detention of money after the day of payment are measured by the value of the money during the time which it has been withheld. This is the reasonable rule of compensation, which restores the plaintiff to that which he has lost by reason of the breach of the contract, and compels the defendant to surrender that which he has gained by the failure to keep his obligation. *Beckwith* v. *Hartford, P. & T. R. R.*, 29 Conn. 269. In law, the sum thus awarded is regarded as damages for the breach of contract, which, it has been held, may not be regulated by the parties. *Talcott* v. *Marston*, 3 Minn. 339; *Daniels* v. *Ward*, 4 id. 168.

There is unquestionably a technical difficulty in enforcing a contract for the payment of interest after the same contract has been broken by the non-payment of the principal sum, but this difficulty may be overcome by regarding the interest agreed upon, as damages which the law will award, as a compensation to the injured party. I concede that in this view the parties will be allowed to liquidate the damages to be awarded for the non-payment of money, but to this there can be no objection, where, as with us, there is no law against usury, and the agreement of the parties, as to interest, is expressly sanctioned. Although the authorities are not uniform upon the point, I conceive that the rule, that the parties to a contract for the payment of money may not liquidate the damages to be recovered upon breach thereof, was invented to support the statute against usury. *Orr* v. *Churchill*, 1 H. Black. 232.

By our statute the rate of interest is not arbitrarily fixed at ten per cent, but it is declared that such shall be the rate when no other is established by the parties. The theory of the law is, that money may be worth more or less than ten per cent per annum, and that the parties to the contract may determine its value ; but if no agreement is made re-

specting it, the value shall be ten per cent per annum. Under this statute the parties may determine the value of the use of the money before it falls due, and it would seem that their estimate of its value, after it falls due, should be accepted, as the true measure of damages, until it is shown to be incorrect. The law seeks to indemnify the plaintiff for the loss he has suffered by the breach of the contract, and it is fair to presume that the rate fixed by the parties affords a just rule of indemnity. If, however, the rate of interest specified in the contract greatly exceeds the real value of the money, it is to be regarded as a penalty for the non-payment of the principal sum, rather than a just recompense for detaining it. Where it is clearly apparent that the rate is fixed for the purpose of enforcing payment, and not for the purpose of compensating the lender, there can be no better reason for exacting the penalty, than in the case of a penal bond. Whether the penalty grows with the lapse of time, or is given in a gross sum, the principle is the same. If it is alleged that the interest specified should be regarded as a penalty, evidence of the going rate of interest at the date of the contract should be heard in order that the court may determine the fact. In this the court will not nicely consider whether the rate agreed upon slightly exceeds the going rate, but if the parties have gone far beyond the just valuation of the use of the money, the fair inference is that it was intended as a penalty. These views have not been adopted without consulting numerous authorities bearing upon the subject, which do not proceed upon any uniform rule. These authorities are collected in 1 Am. Lead. Cas. 503, and in the briefs of counsel in the case of *Young* v. *Thompson*, 2 Kan. 83. From what has been said it will appear that the stipulation in the note to pay interest after maturity was *prima facie* sufficient to establish the measure of damages to be recovered for the breach of the contract. If it was, in fact, intended as a penalty to enforce payment of the principal sum, this might have been shown by proof that the going rate of interest at the date of the note was much

less than that expressed in the instrument. No such proof was offered, and therefore the court was at liberty to accept the stipulation of the parties, as establishing the measure of damages. Estimating the damages according to the stipulation in the note, and rejecting the payments which were mentioned by Wilson, as not having been indorsed upon the note, the judgment appears to have been rendered for a less sum than was due upon the note, but of this plaintiffs in error cannot complain.

The judgment of the probate court is affirmed, with costs.

*Affirmed.*