**In re WOOD FAMILY INTERESTS, LTD., Debtor.**

**Bankruptcy No. 87–B–12731–M.**

United States Bankruptcy Court, D. Colorado.

May 24, 1989.

Eugene C. LaManna, Reading, Pa., for debtor.

Paul Stuber, Boulder, Colo., trustee.

## MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S AMENDED PLAN OF REORGANIZATION

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER, came before this Court at the hearing on confirmation of Debtor's Amended Plan of Reorganization. The Court, having reviewed the Disclosure Statement and the Plan, the Brief, the Objection to confirmation filed by Debtor's principal secured creditor, Sun Savings and Loan Association ("Sun Savings"), and having heard the evidence and the statements of counsel, and being otherwise fully advised in the premises, hereby enters the following findings of fact, conclusions of law, and judgment.

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 151, 157, and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Notice of the hearing on confirmation of Debtor's Amended Plan of Reorganization was properly given.

2. Debtor is a limited partnership and Alan Woods is its general partner.

3. Debtor now owns undeveloped real property located in Colorado Springs, Colorado ("Real Property") which is encumbered by a first deed of trust in favor of Sun Savings. It is Debtor's principal major asset.

4. The Debtor borrowed approximately $1,500,000.00, pursuant to a promissory note and deed of trust, from Sun Savings on December 22, 1984. These funds were used to purchase the Real Property. As a part of this agreement, the Debtor pledged the property as collateral and consented to the payment of interest at one of two rates. The first rate, a contract rate, is in the amount of 11.5%. The second rate, the default rate, was in the amount of 24%.

5. On March 1, 1987, the Debtor defaulted on its payment obligations to Sun Savings. At that time, the interest rate was increased by the creditor to 24% under the contract.

6. The evidence as to value of the collateral, Debtor's Real Property, at the time of confirmation is varied and disparate. All the valuation evidence submitted has been impeached, and/or is susceptible to important questions; none was shown to be specifically reliable. This is true particularly in the fluid, unpredictable, but generally declining, real estate market of Colorado Springs. The evidence includes:

(a) Alan Woods' estimated value of $2,300,000.00.

(b) Sun Savings' appraiser's (Robert Dean) value of $2,100,000.00.

(c) Debtor's appraiser's (Gerald Zaleski) value of $2,550,000.00.

(d) Approximate value determined by most recent comparable sale available, $2,020,000.00.

(e) Wal–Mart purchase discussions $1,430,000.00.

7. The stipulated amount of Sun Savings' claim, as adjusted, at the time of the hearing, at the 11.5% contract rate, was $1,892,518.00. The stipulated amount of Sun Savings' claim, as adjusted, at the time of the hearing, at the 24% default rate, was $2,257,745.00. General unsecured creditor claims in the Chapter 11 estate are, by comparison, nominal in the context of Debtor's financial obligations.

## DISCUSSION

Sun Savings objected to confirmation on three grounds:

1. Turnover of the Real Property collateral by the Debtor to Sun Savings in full and final satisfaction of Sun Savings' claim is impermissible and in violation of the "best interests of the creditors" test in 11 U.S.C. § 1129(a)(7). Sun Savings argues that:

    "This provision violates the 'best interest of creditors' test set forth in § 1129(a)(7) because the property's value is less than Sun Savings' claim which will result in a deficiency to Sun Savings. Thus, the individual partner's assets must be made available to cure this deficiency. *See* § 723 and Bankruptcy Rule 1007(g), *See also, In re Black and White Cattle Co.*, 30 B.R. 508, 527–28 (Bankr. 9th Cir. 1983)."

2. Debtor's Plan is a liquidating Plan and, as such, Debtor is not entitled to a discharge in Chapter 11. 11 U.S.C. § 1141(d)(3).

3. Debtor's Plan fails to accord an 11 U.S.C. § 507(b) super-priority claim to Sun Savings as consideration for the failure of adequate protection resulting from the continuing decline in value of the property since May 1988 when the Court found adequate protection existed and denied Sun Savings' Motion for Relief from Stay.

The Court concludes that the Debtor's Plan of Reorganization cannot, as drafted and proposed, be confirmed because of the objections identified as number one and two above, i.e., Plan fails to comply with 11 U.S.C. §§ 1129(a)(7) and 1141(d)(3).[1] The case law and reasoning in support of the conclusion is as follows.

■ 1. *Value of Real Property.* The Court finds that for confirmation purposes, the value of the Real Property of the Debtor which is to be turned over to Sun Savings in full and final satisfaction of Sun Savings' claim is $1,953,000.00, or $2,100,000.00 less $147,000.00 sales commission (7%) and costs of sale.

■ 2. *Default Rate of Interest May Be Used to Calculate Interest.* The Debtor contends that it is improper to apply the default rate of interest in this matter. Sun Savings maintains it is entitled to assess and collect the default rate of interest. Under the facts of this case, the Court does not agree with the Debtor; Sun Savings is entitled to the default rate.

First, the parties freely negotiated the underlying loan obligation incurred by the Debtor. Second, the question of the validity of default interest is governed by state law, *In re Tastyeast*, 126 F.2d 879 (3rd Cir.1942), *cert. denied*, 316 U.S. 696, 62 S.Ct. 1291, 86 L.Ed. 1766 (1942), and the default rate of 24%, while high, is considered to be within reason and is not usurious in Colorado. *See*, C.R.S. § 5–12–103 and C.R.S. § 18–15–104.

The Debtor argues that the case of *Browne v. Steck*, 2 Colo. 70 (1873) should be controlling regarding the imposition of default rate of interest. However, this case is inapplicable to the instant matter. In *Browne*, the Court correctly held that the interest rate charged on a promissory note should bear a reasonable relationship to the value of money. However, *Browne* is factually distinguishable because the interest rate assessed against the Debtor in that case was 120% annually which is clearly unreasonable. Here the imposition of interest at 24% does not even begin to equate with that rate.

This Court agrees with the ruling of the Colorado Supreme Court in *McKay's Estate v. Belknap Savings Bank*, 27 Colo. 50, 59 P. 745 (1899). In *McKay*, the Court found that the default rate of interest, which doubled the contract rate of interest, was not unreasonable and should be enforced. Likewise, in the instant matter, the default rate of 24% is not unreasonable and will be enforced.

---

1. It is not dispositive of this dispute, nor necessary to rule on the issue in Sun Savings' third objection and thus the Court will not address the matter.

Further support for this conclusion is found in *Ruskin v. Griffiths*, 269 F.2d 827, 831 (2nd Cir.1959). In that case the Second Circuit Court of Appeals held that where the unsecured creditors would not be harmed and the contest over default interest involves only a creditor and a stockholder/debtor, payment of the default rate of interest by the debtor is proper. *See also, Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 164, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946).

The instant matter involves just such a dispute. Here, the unsecured creditors will not be harmed if the default rate of interest is imposed because the Debtor's general partner has agreed, as he must, to ensure that the unsecured creditors are paid in full. Since the only remaining dispute is between the Debtor/general partner and Sun Savings, it is only proper to award Sun Savings the default rate of interest. *Id.*

■ 3. *Deficiency Claim Cannot Be Discharged.* Sun Savings' claim ($2,257,-745.00) exceeds the value of the Real Property ($1,953,000.00) by $304,745.00 and the Plan impermissibly provides for discharge of this deficiency claim.

■ For the reasons cited by Sun Savings, the Court concludes that confirmation is not available for a limited partnership's Plan of Reorganization which extinguishes debt that is otherwise not discharged in a Chapter 11 case. 11 U.S.C. § 1141(d).

The section of the Bankruptcy Code, § 1141(d)(3), dealing with discharge in Chapter 11 and the case law interpreting it are clear that a discharge is not available to corporate or partnership debtors who propose a liquidating plan of reorganization. A case remarkably similar to the instant matters is, *Teamsters' Pension Trust Fund v. Malone Realty Co.*, 82 B.R. 346 (E.D.Pa.1988) which also involves a liquidating partnership in Chapter 11. When addressing the discharge issue the Court states:

> [U]nder § 1141(d)(3), a corporate or partnership debtor that is both liquidating and discontinuing its business does not receive a discharge when its plan is confirmed. *Id.* at 349.

Likewise, the Debtor in this matter is not entitled to a discharge because it is a partnership which is liquidating and discontinuing its business.

IT IS THEREFORE ORDERED that, for the reasons set forth hereinabove, the Court DENIES Debtor's Motion to Confirm Debtor's Amended Plan of Reorganization.