### In re GLOBAL WATER TECHNOLOGIES, INC., Debtor.

### No. 03–19278 HRT.

United States Bankruptcy Court, D. Colorado.

July 1, 2004.

---

898

Robert Padjen, Garry R. Appel, Denver, CO, for Debtor.

Joanne C. Speirs, Kelly J. Sweeney, Denver, CO, for U.S. Trustee.

### ORDER CONFIRMING CHAPTER 11 PLAN

HOWARD R. TALLMAN, Bankruptcy Judge.

This case comes before the Court to consider confirmation Debtor's and Benjamin Brant's First Amended Plan of Reorganization [the "Plan"] and the U.S. Trustee's Second Motion to Dismiss or Convert. Confirmation of the Debtor's plan is opposed by both the U.S. Trustee and the Securities and Exchange Commission ["S.E.C."]. The Court held a confirmation hearing on April 28, 2004, and allowed the parties an opportunity to submit post-hearing briefs. The Court has considered the evidence presented at the confirmation hearing and the arguments of counsel presented both at hearing and in the post-hearing submissions. The Court is now ready to rule.

### Facts and Background of the Case

1. This chapter 11 case was commenced on May 14, 2003, by the filing of a Voluntary Petition.

2. Pre-petition, the Debtor was engaged primarily in the business of providing water treatment programs for cooling water systems used in light industry and HVAC applications.

3. The Debtor's CEO and 68% shareholder, George Kast, has been in the commercial water processing industry for 20 years and with the Debtor for over 10 years.

4. When Enron filed for chapter 11 relief on December 2, 2001, the Debtor had $45,000,000.00 in contracts with an Enron subsidiary. The fallout from these events resulted in one-half to two-thirds of the Debtor's customer base filing for bankruptcy as well, forcing the Debtor to downsize.

5. Debtor sold its wholly owned subsidiary Psychrometric Systems, Inc. ["PSI"] to Camden Holdings, Inc., ["Camden"] under a Stock and Asset Purchase Agreement dated February 1, 2003.

6. PSI is currently in a chapter 7 bankruptcy proceeding in this district and its trustee has asserted claims

against the Debtor's estate in this case.

7. The Debtor alleges that Camden and its principal, Mark Anderson, have failed to perform their obligations under the Stock and Asset Purchase Agreement and that the Debtor has significant claims against Camden and Anderson as a result.

8. At the time the Debtor filed its Voluntary Petition, it had no business operations and has not operated its business during the pendency of this bankruptcy proceeding.

9. At the time the Debtor filed its Voluntary Petition, Debtor disclosed assets in the amount of $60,023,000.00; it valued its causes of action against Camden and Anderson [the "Litigation Claims"] at $60,000,000.00 and disclosed $4,000.00 in cash and $19,000.00 held by Debtor's bankruptcy counsel as a retainer.

10. Since the filing of the Voluntary Petition, Debtor reports that over $40,000.00 has been spent on the investigation of the Litigation Claims and, as a result of that investigation, it believes that the Litigation Claims should be worth at least $800,000.00.

11. The centerpiece of Debtor's Plan is the proposed sale of the Litigation Claims to Benjamin Brant, or the highest bidder. Mr. Brant's offer is to purchase the claims for $5,000.00, with the provision that sixty percent of any recovery that is received from that litigation will be paid into a fund for the payment of Debtor's secured and unsecured creditors.

12. The Debtor's Plan states that, upon plan confirmation, Debtor will recommence its business operations.

## Discussion

The U.S. Trustee objects to confirmation of Debtor's Plan on the basis that it provides that the Debtor is to receive a discharge of its debts in violation of 11 U.S.C. § 1141(d)(3). That section generally provides that a liquidating corporation, without ongoing business operations, is not be discharged of its debts. The U.S. Trustee also asserts that the Debtor's Plan is proposed in bad faith. The S.E.C. objects on the same grounds as well as upon the assertion that Debtor's Plan is not feasible.

Objections filed by certain of the Debtor's creditors and the PSI Trustee have been resolved and withdrawn prior to or at hearing. Therefore, the Court is presented with a difficult decision where the economically-affected creditors support the Debtor's Plan and the regulatory parties-in-interest do not.

### Section 1141(d)(3)

The U.S. Trustee and the S.E.C. argue that the language contained in Debtor's plan grants the Debtor a *sub rosa* discharge of its debts while studiously avoiding the term "discharge," therefore, the provisions of § 1141(d)(3) apply to this Debtor. The Court agrees. The Court has reviewed the language used in ¶ 8.3 of the Plan. The Court finds that the effect of the language used therein is to grant the Debtor a discharge of its debts, regardless of the fact that "discharge" is never mentioned in that paragraph.

The Court parts company with the U.S. Trustee and the S.E.C., however, on the application of § 1141(d)(3). That subsection denies a discharge to a debtor when three elements are satisfied:

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of [title 11] if the case were a case under chapter 7 of this title.

11 U.S.C. § 1141(d)(3).

■ The Court finds that the Plan does provide for liquidation of substantially all of Debtor's assets and that the Debtor would be denied a discharge under § 727(a) if this were a case under chapter 7. Throughout the pendency of this bankruptcy case, the Debtor has stated to the Court that the purpose behind filing of the case was to investigate and formulate a plan for the Debtor to pursue the Litigation Claims. Upon the sale of the Litigation Claims, the only assets left in the bankruptcy estate will be some amount of cash, the "good will" of the company, and the possibility of avoidable transfer recoveries. While, this may not represent a total liquidation of the company, it certainly does represent a substantial liquidation of the Debtor's property under § 1141(d)(3)(A).

The Court further finds that the Debtor would not receive a discharge under § 727(a) if this were a case under chapter 7. Under chapter 7, § 727(a)(1) provides that only an individual may receive a discharge of debts. As a corporate entity, the Debtor does not meet that description and could not receive a discharge under that section. Consequently, § 1141(d)(3)(C) is satisfied.

■ The Court finds, however, based on the evidence before it, that the Debtor will engage in business post-confirmation. In this case, § 1141(d)(3)(B) is a factor that requires the Court to somehow look forward in time and address the Debtor's operations after Plan consummation. The

Debtor presented uncontroverted evidence of its intent to resume its business operations. It presents a business plan in its Disclosure Statement; core personnel are in place to recommence the business operations; and Debtor presented testimony of business relationships that will be key to the Debtor reentering the marketplace. In short, the Debtor has a plan to recommence its business and customers desire the services it can provide.

The Court must agree with S.E.C. and the U.S. Trustee that Debtor's business plan is thin on information as to capital requirements and sources of funding. However, the testimony at hearing was that capital requirements are minimal. The Debtor will not manufacture a product and maintain an inventory. It will obtain components of its treatment systems from outside vendors. The Debtor is in the business of selling treatment systems based upon its proprietary design. Its treatment system uses a combination of proprietary technology supplied by third party manufacturers and more commonly available components. Under its proposed business plan, capital requirements are minimal since certain customers or vendors are willing to provide necessary funding or products. The key components of the plan are the technical expertise of the Debtor's personnel and its established business relationships. Consequently, in light of a business plan that does not require a large infusion of capital to implement, the lack of detailed information as to sources of funding is not fatal to the Court's determination of the feasibility of the Debtor resuming its business after confirmation. Therefore, § 1141(d)(3)(B) is not satisfied.

The Court finds that, even though Debtor's Plan contains language that is tantamount to granting of a discharge of prepetition debts, because the Debtor will re-

sume its business operations post-confirmation, its Plan does not violate § 1141(d)(3).

The pervasive theme of the S.E.C. objection, as well as that of the U.S. Trustee, is the fear that confirmation of this Plan will put the Debtor in the position to market itself as a shell corporation, cleansed of its corporate debt. The concern is that the Debtor will be an attractive merger prospect for a private company desiring to "go public" without compliance with the usual disclosure and registration requirements. Indeed, § 1141(d)(3) is a change from prior law and its legislative history clearly indicates that it was included in the Code to address the very concerns that the S.E.C. raises here. The Court is being asked to vindicate this important public policy.

■ But, the role of this Court is to enforce the statute as it is written, not to re-write the statute to conform to the policy behind it. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'") (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). Congress chose to express its policy determination in the specific language of the statute. This Court is not free to graft additional requirements to the statute in this individual case for fear that the Debtor may not engage in its business post-confirmation. The objectors failed to take those fears beyond the realm of speculation into something more substantive. The Court cannot ignore the uncontroverted evidence of the Debtor's intent to re-commence its business operations. The Court finds that the testimony of George Kast and Benjamin Brant was credible with regard to the company's wherewithal to reenter the marketplace.

■ The Court acknowledges the concerns expressed by the U.S. Trustee and S.E.C. with respect to trafficking in corporate shells. But, to the extent that the language of the statute enacted by Congress may miss the mark or leave room for a debtor to comply with the statute yet still engage in the conduct that Congress intended to prohibit, any adjustment to the statute must be made by Congress and not this Court. The Court simply may not use the legislative history to override the plain language of the statute.

The Court does indeed deplore the evils described by S.E.C.—that the Debtor may eventually seek to become a publicly held candidate for some future stock manipulation scheme; attempting to bypass the public reporting protections of the securities law; allowing slick promoters to prey on gullible investors. But, the current chapter 11 confirmation process is not the most appropriate forum in which to address such a speculative future event. Should such events actually come to pass, it is more a matter to be addressed by the S.E.C.'s oversight of the securities law and marketplace.

More importantly, the Court has not been convinced that the Debtor intends to violate the letter or the spirit of the § 1141(d)(3). No independent evidence was presented at hearing by either the U.S. Trustee or S.E.C. to support their suspicions of the Debtor's bad motive. Nor did the U.S. Trustee's cross examination of the Debtor's witnesses cast significant doubt in the Court's mind as to the witnesses' credibility. In fact, the S.E.C. admitted in argument that there is no current evidence of any intent by the Debtor to market its corporate shell to possibly merge with a private company.

Thus the Court is left with nothing more substantive than allegations or speculation that the Debtor may be in a position to act, sometime in the future, in a manner that is contrary to the statements of Congressional intent that appear in the legislative history of § 1141(d)(3).

The Court has reviewed the cases cited by the U.S. Trustee and S.E.C. on this issue. *In re Wood Family Interests, Ltd.*, 135 B.R. 407 (Bankr.D.Colo.1989) and *In re Fairchild Aircraft Corp.*, 128 B.R. 976 (Bankr.W.D.Tex.1991), stand for the unremarkable proposition that "a corporate or partnership debtor that is both liquidating and discontinuing its business does not receive a discharge when its plan is confirmed." *Wood* at 410; *Fairchild* at 981–82. But, of course, the Court has found that the Debtor in this case is continuing its business. Thus, those cases are distinguishable from the facts and circumstances of the present case.

This is not the "rare case" described by the Supreme Court in *Ron Pair Enterprises, Inc.*, where application of the plain language of the statute leads to a result that is clearly at odds with the intent of the drafters. The best evidence that the Court has before it indicates that this is a Debtor that will operate its historical business operations after confirmation of its Plan. As a consequence, this case does not present the situation that the drafters of the statute sought to avoid—a non-operating corporate entity obtaining a discharge. The objectors have not carried their burden with respect to the allegation that the plan violates § 1141(d)(3).

*Good Faith*

■■■■ The Code provides that, in order for a chapter 11 plan to be confirmed, it must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). It is the Debtor's burden to demonstrate compliance with § 1129(a)(3). *Fin. Sec. Assurance, Inc. v. T–H New Orleans Ltd. P'ship (In re T–H New Orleans Ltd. P'ship)*, 116 F.3d 790, 802 (5th Cir.1997) ("The standard of proof required by the debtor to prove a Chapter 11 plan was proposed in good faith is by a preponderance of the evidence.") (citing *In re Briscoe Enter., Ltd., II*, 994 F.2d 1160, 1165 (5th Cir.1993)).

"The test of good faith is met if there is a reasonable likelihood that the plan will achieve its intended results which are consistent with the purposes of the Bankruptcy Code, that is, is the plan feasible, practical, and would it enable the company to continue its business and pay its debts in accordance with the plan provisions."

*Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.)*, 779 F.2d 1456, 1459 (10th Cir.1985) (quoting the bankruptcy court opinion).

In finding a lack of good faith, courts have looked to whether the debtor intended to abuse the judicial process and the purposes of the reorganization provisions. Denial of confirmation for lack of good faith "is appropriate particularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." The focus is on "the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." To determine good faith: the court looks to the debtor's plan and determines, in light of the particular facts and circumstances, whether the plan will fairly achieve a result consistent with the Bankruptcy Code.

*In re Valley View Shopping Center, L.P.*, 260 B.R. 10, 27–28 (Bankr.D.Kan.2001) (quoting *Travelers Ins. Co. v. Pikes Peak*

*Water Co. (In re Pikes Peak Water Co.),* 779 F.2d 1456, 1460 (10th Cir.1985)).

■ As the above quoted language illustrates, there is no hard and fast definition of good faith, but the Court must look at the totality of the circumstances in any given case. Judge Krieger observed in *In re Mount Carbon Metro. Dist.,* 242 B.R. 18 (Bankr.D.Colo.1999), that, under any of the reorganization chapters,

> the Court should consider the totality of the circumstances. The factors which a Court should examine in each chapter include: (1) whether a plan comports with the provisions and purpose of the Code and the chapter under which it is proposed, (2) whether a plan is feasible, (3) whether a plan is proposed with honesty and sincerity, and (4) whether a plan's terms or the process used to seek its confirmation was fundamentally fair.

*Id.* at 40–41.

■ The main thrust of the objectors' good faith argument is that, because the primary purpose of chapter 11 is to reorganize a going business, Debtor's plan does not comport with the purposes of chapter 11. Because the Debtor was no longer an operating business at the time the petition was filed and because the objectors doubt the feasibility and sincerity of Debtor's intent to resume its business after its Plan is confirmed, the Court is urged to deny confirmation.

The Court doubts that the permissible purposes of chapter 11 are as narrowly defined as the objectors suggest. To accept the objectors' good faith argument would be to essentially brand any liquidating chapter 11 plan as *ipso facto* proposed in bad faith. There is no question that this case presents the very unique situation of a Debtor who has ceased its business operations at the petition date and who proposes to resume those operations after confirmation it its Plan. It is plain that the animating factor behind this case, from the beginning, has been the desire of the Debtor's management to investigate and formulate a strategy for realizing on Debtor's alleged claims against Camden and Anderson. Thus, this is hardly a typical chapter 11 case.

The Court finds it significant that no creditor of the Debtor has objected to confirmation of Debtor's Plan. In fact, those parties who do have an economic stake in the success of Debtor's Plan have voted overwhelmingly in favor of its confirmation. The Court has previously discussed the Debtor's stated intent to resume its business operations and has found the Debtor's Plan to be feasible in that respect. The fact that this case comes before the Court in an unusual posture does not, in an of itself, indicate bad faith. The Debtor has been candid with the Court from the inception of the case as to the Debtor's motivation for filing the case. The Court finds that the creditors of the Debtor have received full and fair disclosure of all factors relevant to making an informed choice as to whether or not to vote for the Plan. The Plan does comport with the provisions of the Code in that it seeks to repay the Debtor's creditors by realizing on the Litigation Claims, the only significant asset the Debtor possessed on the petition date. The Court is satisfied that Debtor's Plan has been proposed in good faith.

*Feasibility*

The S.E.C. has objected to Debtor's Plan on grounds of feasibility. Its objection primarily goes to the feasibility of Debtor's business plan and Debtor's intention to resume business operations post-confirmation. The Court has previously reviewed and discussed that aspect of the Debtor's Plan. The Court finds that the

Debtor has met its burden with respect to demonstrating the feasibility of its Plan.

Based upon evidence presented in open court and the above discussion, the Court **FINDS** that:

1.  Acceptance of the Plan was properly solicited and creditors, equity security holders and other parties in interest received adequate notice of and had an opportunity to object to confirmation of the Plan; and

2.  The Plan satisfies the requirements of 11 U.S.C. § 1129(a). Therefore, it is

**ORDERED** that

1.  The objections to confirmation filed by the U.S. Trustee and Securities and Exchange Commission are hereby OVERRULED.

2.  The U.S. Trustee's Second Motion to Dismiss or Convert is hereby DENIED.

3.  The Debtor's and Benjamin Brant's First Amended Plan of Reorganization is **CONFIRMED.**

4.  The Debtor, any entity issuing securities under the Plan, any entity acquiring property under the Plan, and any creditor, equity security holder or general partner of the Debtor is bound by the provisions of the Plan.

5.  Except as otherwise provided in the Plan, all property of the estate is hereby vested in the Debtor.

6.  Except as otherwise provided in the Plan or by 11 U.S.C. § 1141(d)(2) or (3), all property dealt with by the Plan is hereby free and clear of all claims and interests of creditors, equity security holders and general partners in the Debtor.

7.  The Plan Proponent shall, within 15 days of the entry of this Order, mail to all parties in interest in the Chapter 11 case notice of entry of this Order pursuant to Bankruptcy Rule 2002(f) and file a Certificate of Mailing with the Court evidencing such compliance.

8.  Any applications for compensation for services or reimbursement of costs or expenses in connection with the case, or in connection with the Plan and incident to the case shall be filed on or before July 30, 2004.

9.  Pursuant to 11 U.S.C. § 704(9) as incorporated by § 1106(a)(1) the Debtor shall file a final report on or before January 1, 2005. If the administration of the estate is not complete by such date, the Debtor shall file an interim report by such date advising the Court as to when the estate will be fully administered.